**In the Matter of the GUARDIANSHIP OF Timothy Glenn WALLING and Matthew Lynn Walling, Minors,**

**Lana WALLING, Appellant,**

v.

**Billy Eugene WALLING and Gloria Walling, Appellees.**

**Nos. 62400, 63344.**

Supreme Court of Oklahoma.

July 22, 1986.

As Corrected on Denial of Rehearing Sept. 10, 1986.

E. Joe Lankford, Sweeney & Lankford, Norman, for appellant.

Donita Bourns Douglas, Fagin, Hewett, Mathews & Fagin, Oklahoma City, for appellees.

SUMMERS, Justice.

This case involves a custody dispute over two boys, approximate ages eight and six, with the mother on one side and the paternal grandparents on the other. The custody dispute took the form of a guardianship proceeding brought by the grandparents in Beckham County. The first question presented is a jurisdictional one concerning the applicability of the Uniform Child Custody Jurisdiction Act, 10 O.S.1981 §§ 1601, et seq. (UCCJA) to proceedings for the guardianship of minors. The chronology of the case is as follows:

(1) September 16, 1983—The father of the minor children was murdered.

(2) September 23, 1983—The mother moved the children to California and estab-

lished residence there. She was charged in connection with the murder of the father but was later acquitted.

(3) January 25, 1984—Guardianship proceedings were initiated by the paternal grandparents in Beckham County District Court.

(4) March 19, 1984—Trial court found it had jurisdiction over the subject matter.

(5) March 27, 1984—The brother of the mother filed a petition for guardianship of the children in the State of California, to which the mother consented.

(6) May 8, 1984—Trial court entered judgment ordering that the grandparents be made guardians of the children.

(7) June 19, 1984—California court dismissed the brother's petition on the basis that Oklahoma had jurisdiction.

(8) November 1, 1984—The trial court granted a motion for attorneys' fees and travel expenses incurred by the grandparents in the California proceeding.

(9) The mother appealed and the Court of Appeals reversed for want of jurisdiction in Beckham County, holding that the UCCJA was not applicable.

The central issue on certiorari is whether the UCCJA is applicable to a guardianship of minor proceeding. Guardianship proceedings are governed by 58 O.S.1981 § 761 [1] et seq. The guardianship statute has a requirement that the minor be an inhabitant or resident of the county. The mother's argument is that the jurisdictional requirement of residency contained within the guardianship statute must be met, and that not being so in this instance, the trial court lacked jurisdiction. The mother also asserts that the UCCJA does not apply to proceedings for the guardianship of minors. The trial court found that the UCCJA did apply to guardianship of minor

---

1. The court of each county, when it appears necessary or convenient, may appoint guardians for the persons and estates, or either, or both of them, of minors who have no guardians legally appointed by will, or deed, and who are inhabitants or residents of the county, or who reside without the state and have estate within the county. Such appointment may be made on the petition of a relative or other person in behalf of such minor. Before making the appointment the court must cause actual notice by any means it deems reasonable to be given to the relatives of the minor residing in the county, to any person having care of such minor and, if he is above the age of fourteen (14) years, to the minor himself.

proceedings, and after a full hearing entered an order granting the grandparents guardianship of the minor children.

The Court of Appeals held that the UCCJA does not come into play where the custody dispute takes the form of a guardianship proceeding unless the children are residents of the county as required by 58 O.S.1981 § 761.

The grandparents now seek certiorari. They urge that the UCCJA was intended to apply to guardianship proceedings when such proceedings take the form of a custody action. They call attention to the UCCJA commissioner's note that the "custody proceeding" envisioned in the Act "is to be understood in a broad sense. The term covers habeas corpus actions, guardianship petitions, and other proceedings available under general state law to determine custody." [2] They note that the definition of guardian contained in the Oklahoma Statutes implies such interpretation by stating:

> "A guardian of the person is charged with the *custody* of the ward, and must look to his support, health and education...." [3] (emphasis supplied).

Under Oklahoma law they argue, a guardianship proceeding is perceived as a type of custody proceeding. In a case on a petition for the appointment of a guardian for a minor the custody and care of the child involved is a central issue. Therefore, a proceeding for the guardianship of a minor proceeding, is a "custody proceeding" which would come under the control of the UCCJA. The grandparents correctly point out that this is an issue of first impression for Oklahoma.

Two states have ruled affirmatively on the applicability of the UCCJA to guardianship of minors proceedings. We find no authority to the contrary. In the case of *In Re Guardianship of Wonderly* [4] the Ohio Supreme Court decided that the

UCCJA was applicable to a guardianship termination proceeding involving minors. The Ohio UCCJA definition of "custody proceeding" is identical to the definition in the Oklahoma Statutes.[5] The Ohio Supreme Court held that the Ohio statutes indicate that a guardian shall have custody of the person and the estate of a minor. Both a "custody determination" and a "custody proceeding" require the application of a UCCJA when the custody of a minor is the main issue or one of several issues in litigation. The guardianship issue and the custody issue are inextricably intertwined, thus requiring compliance with the UCCJA.[6]

In the case of *In Re Estate of Patterson,* [7] the Missouri Court of Appeals concluded that the UCCJA applied to the appointment of a guardian of the person of minors. In Missouri, guardianship proceedings were divided into proceedings for guardianship of property and of the person. The court noted that there was a conflict between the prior enacted guardianship statutes and the Missouri version of the UCCJA. The court decided that where a conflict occurred, the court would adhere to the more recent and more specific UCCJA. The court therefore held that when the proceeding involved the guardianship of the person of a minor the UCCJA was applicable and required compliance with its provision.

In Oklahoma, our Rule 8.2 of the Rules for the District Courts implies that the UCCJA is to be applied to custody proceedings. The rule states:

> "[A]ll orders of adjudication in juvenile proceedings, termination of parental rights and *all final orders in* Habeas Corpus and *guardianship of the person proceedings resulting in the adjudication of status, custody or wardship of minor children, shall contain a finding*

---

2. UCJA, 9 U.L.A. § 2, p. 120.

3. 30 O.S.1981 § 15.

4. 67 Ohio St.2d 178, 423 N.E.2d 420 (1981).

5. 10 O.S.1981 § 1604(3).

6. Id at 423–424.

7. 652 S.W.2d 252 (Mo.App.1983).

*of compliance with* 25 U.S.C.A. 1901 et seq. (Oklahoma Indian Child Welfare Act) and *10 O.S.1601 et seq. (Uniform Child Custody Jurisdiction Act*). (Emphasis added.)

We think it clear that the guardianship proceedings with respect to those of minors pursuant to 58 O.S.1981 § 761 must be in compliance with the Uniform Child Custody Jurisdiction Act as adopted by the State of Oklahoma and set forth in 10 O.S.1601 et seq.

Having found that a guardianship proceeding with respect to a minor must comply with the UCCJA, we now look to the Act itself to determine whether or not the jurisdictional requirements were met in the instant case. The prerequisites for jurisdiction are set forth in Section 1605 of the Act. They are as follows:

"A. A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

1. This state:

a. is the home state of the child at the time of commencement of the proceeding, or

b. had been the child's home state within six (6) months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; or

2. It is in the best interest of the child that a court of this state assume jurisdiction because:

a. the child and his parents, or the child and at least one contestant, have a significant connection with this state, and

b. there is available in this state substantial evidence concerning the child's present or future care, protection, training and personal relationships; or

3. The child is physically present in this state and:

a. the child has been abandoned, or

b. it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or

4. a. It appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs 1, 2 or 3 of this subsection, or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and

b. it is in the best interest of the child that this court assume jurisdiction."

It is apparent that paragraphs 3 and 4 of subsection A do not apply in this case because both require the physical presence of the children in the state. At the time of the hearing the children in this case were in the state of California.

Paragraph 1.a also does not apply because the children were not in the state at the time the commencement of the proceeding. Further, paragraph 1.b is not applicable because of the requirement of having a "person acting as parent" continued to live in the state. A "person acting as parent" is statutorily defined as a person, other than a parent who has physical custody of a child *and* who has either been awarded custody by court or claimed a right to custody.[8] The conjunctive "and" requires that the person acting as a parent have physical custody of a child and has either been awarded custody by a court or claimed a right to custody. Here the grandparents did not have physical custody of the child. Therefore, the jurisdictional requirements of paragraph A.1(a) and (b) have not been met in the instant case.

Paragraph 2. requires

"It is in the best interest of the child that a court of this state assume jurisdiction because:

___

8. 10 O.S.1981 § 1604(9).

a. the child and his parents and at least one contestant, have a significant connection with the state, and

b. there is available in this state substantial evidence concerning the child's present or future care, protection, training and personal relationships."

■ In the instant case the children, the mother and the grandparents have a significant connection with the state of Oklahoma as required by paragraph 2.a. There also exists substantial evidence in the state concerning the children's present or future care, protection, training and personal relationships as required under paragraph 2.b.

Present and future care is determined largely on the basis of past care. The majority of the witnesses who know the parties well are located in Oklahoma. The interests of the children are best served when the court has optimum access to relevant evidence about the child and the family. The UCCJA encourages that there be maximum rather than minimum contacts with the state.[9] It is apparent that the best information on past conduct and fitness of the parent and grandparents exists in the state of Oklahoma.[10]

We have previously held that the four conditions for jurisdiction under the act are alternative and if the requirements of any one of the four are met an Oklahoma court has jurisdiction.[11] We find that the jurisdictional prerequisites under paragraph 2a and b are met in the instant case and the Beckham County District Court properly held that it had jurisdiction over the guardianship proceedings of the two minor children.

■ We now turn to those propositions of error raised by the appellant which were not addressed by the Court of Appeals. The mother alleges that the doctrine of collateral estoppel should apply in this case because of her prior acquittal in the murder of her husband. She argues that the

admission of evidence concerning her involvement in that matter was erroneous, denying her equal protection under the law and a fair trial. She correctly states the rule that an acquittal in a criminal action is not admissible for the purposes of proving the truth of any facts, citing *Goodwin v. Continental Casualty Co.*, 175 Okl. 469, 53 P.2d 241 (1936). However, she urges that the general rule not be followed in this matter. We have recently addressed this issue of collateral estoppel of acquittal in a criminal case being applicable in a subsequent civil matter. In *State Mutual Life Insurance Co. of America v. Hampton*, Justice Opala in a concurring opinion stated:

"The difference in the relative burdens of proof in the criminal and civil action precludes the application of a doctrine of collateral estoppel [issue preclusion]. Acquittal on a criminal charge merely reflects the existence of a reasonable doubt. It never rules out the possibility that a preponderance of the evidence, adduced in a civil contest, could show that the acquitted slayer did not stand in the status of a person who took the life of the accused by felonious, intentional and unjustified act.[12]

■ The rule is that an acquittal in a criminal action is not admissible for the purpose of proving the truth of any facts. The trial court did not admit acquittal for the purpose of proving the truth of any facts. The rule, therefore, was not violated and refutes the mother's argument of not being afforded equal protection in this matter. To ask that we not follow the rule in this matter is itself an argument for unequal protection, and to not be treated as are all other individuals who have been acquitted for criminal actions and now face subsequent civil litigation. Also, the grandparents were not parties to the criminal case. Due process would preclude their

9. UCCJA, 9 U.L.A. § 3, p. 124.

10. *Blosser v. Blosser*, 2 Ark.App. 37, 616 SW.2d 29 (1981).

11. *Holt v. District Court for the 20th Judicial District, Ardmore, Carter County*, 626 P.2d 1336, 1341 (Okl.1981).

12. 696 P.2d 1027, 1036 (Okl.1985).

being bound by the results of proceedings in which they did not participate.[13]  In addition it should be noted that the trial court did not determine that the mother committed the murder but that she and third parties discussed the murder of her husband in the presence of the children.  This assignment of error is without merit.

■  The mother also argues that the trial court erred in admitting testimony regarding conversation between herself and David Walling, brother of the deceased in the presence of grandmother-appellee Gloria Walling.  She alleges that because Walling was an attorney the conversation was privileged.  The burden is on the one making the objection on the ground of privilege to establish that the attorney-client relationship existed.[14]  The record is void of any evidence which would indicate that the mother was seeking legal advice from the brother of the deceased.  The facts are that David Walling, a brother of the deceased, was a full time assistant district attorney in Oklahoma County at the time the conversation took place.  Under 12 O.S. 1981 § 2502 which authorizes attorney-client privilege the definition of client is as follows:

> A.2  "A 'client' is a person … who consults an attorney with the view towards obtaining legal services or in rendering professional legal services by an attorney."

David Walling as a full time assistant district attorney could not provide legal services to the appellant.  His testimony was that she was not seeking legal advice.  Therefore, the court was justified in finding that she was not a "client" under Section 2502.

Further, the communication in question was made in the presence of a third party, Gloria Walling.  Under Subsection 5 of Section 2502, a communication made by an attorney to a client may be confidential even though disclosed to third persons, but only if those persons are reasonably necessary for the transmission of the communication.  That is not the case here.  The communication was not privileged.

■  The next proposition is that the trial court erred in admitting a home study of the grandparent's home when there was no home study of the mother's home.  The record shows that the mother filed motions for both home studies.  The court granted both motions.  The mother's attorney memorialized the decision of the trial court.  However, the memorialized order did not order a home study of the mother's home in California.  It appears neither the mother nor her attorney followed up to insure that a home study be conducted in the state of California.  She now objects to the home study of the grandparents having been admitted into evidence.  In not finding any Oklahoma authority directly on point and looking at other jurisdictions we find that the Supreme Court of Wisconsin specifically held that when a report was issued from a state department of public welfare pursuant to the request of one of the parties, that particular party could not later be heard to object to the court basing its decision in part on that report.[15]  In *Bass v. Bass*,[16] the Alaska Supreme Court held:

> "The better-reasoned modern cases tend to support the view that when an independent investigation is made by the court … such action … *being aquiesced in by the parties*, the consideration by the court of such an investigation will not constitute reversable error even though the report is not incorporated into the record.[17]

A party who requested a home study cannot be heard to complain of its admission.

---

**13.**  *State Mutual Life Insurance Co.,* supra, 1033 n. 4, *Park Lane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 326, note 7, 99 S.Ct. 645, 649, note 7, 58 L.Ed.2d 552 (1979).

**14.**  *Hurt v. State,* 303 P.2d 476 (Okl.Crim.1956).

**15.**  *Onderdonk v. Onderdonk,* 88 N.W.2d 323 (Wis.1958).

**16.**  437 P.2d 324 (Alaska 1968).

**17.**  652 S.W.2d 252 (Mo.App.1983).

Approximately three months after the trial court awarded custody of the minor children to the grandparents, they filed their motion to assess costs, fees, and expenses incurred in the defense of the guardianship proceeding brought by Gene Montgomery, mother's brother in California. The California court denied that petition. In its order, however the California court made no award of fees and costs. In this case the trial court awarded grandparents their attorney's fees incurred in the California matter in the total sum of $4,261.92 and allowed grandparents to submit an amount representing their travel expense. The trial court based its award in assessment of the attorneys fees, costs and expenses in the California proceeding on the statutory provisions of 10 O.S.1981 §§ 1610 [18] and 1613.[19] The mother's final proposition assails that order as error. Section 1610 incorporates the "clean hands doctrine" with respect to the interstate recognition of custody decrees. Under this doctrine courts refuse to assume jurisdiction to examine out of state custody decrees when the petitioner has abducted the child or has engaged in some other objectionable scheme to gain or retain physical custody of the child in violation of the decree. Subsection C adds a financial de-

terrent to child stealing or similar reprehensible conduct. The award of attorney's fees and expenses is limited to when the court is dismissing a petition under this section.

■ This section does not grant the court jurisdiction to award attorney's fees and expenses incurred in appearing in a guardianship proceeding in the State of California. The Court of Appeals correctly reversed this award. Therefore, the order of the trial court granting attorney's fees and costs and expenses in the California guardianship proceedings is hereby reversed.

Certiorari is granted and opinion of Court of Appeals, Division 3, is vacated. Judgment of the trial court in appointing guardians is affirmed; judgment in awarding attorney's fees and expenses in connection with the California proceeding is reversed.

SIMMS, C.J., and HODGES, LAVENDER, OPALA, KAUGER and SUMMERS, JJ., concur.

HARGRAVE and WILSON, JJ., dissent.

---

**18.** Section 1610 states:

A. "If the petitioner for an initial decree has wrongfully taken the child from another state or has engaged in similar reprehensible conduct the court may decline to exercise jurisdiction if this is just and proper under the circumstances.

B. Unless required in the interest of the child, the court shall not exercise its jurisdiction to modify a custody decree of another state if the petitioner, without consent of the person entitled to custody, has improperly removed the child from the physical custody of the person entitled to custody or has improperly retained the child after a visit or other temporary relinquishment of physical custody. If the petitioner has violated any other provision of a custody decree of another state the court may decline to exercise its jurisdiction if this is just and proper under the circumstances.

C. In appropriate cases a court dismissing a petition under this section may charge the petitioner with necessary travel and other expenses, including attorneys' fees, incurred by other parties or their witnesses."

**19.** Section 1613 states:

A. "The court may order any party to the proceeding who is in this state to appear personally before the court. If that party has physical custody of the child the court may order that he appear personally with the child.

B. "If a party to the proceeding whose presence is desired by the court is outside this state with or without the child the court may order that the notice given under Section 7 of this act include a statement directing that party to appear personally with or without the child and declaring that failure to appear may result in a decision adverse to that party.

C. "If a party to the proceeding who is outside this state is directed to appear under subsection B of this section or desires to appear personally before the court with or without the child, the court may require another party to pay to the clerk of the court, travel and other necessary expenses of the party so appearing and of the child if this is just and proper under the circumstances."