**Robin Ann JOLIFF, Appellee,**

v.

**Dennis Steven JOLIFF, Appellant.**

**No. 73986.**

Supreme Court of Oklahoma.

March 24, 1992.

Jim McClure, Muskogee, for appellee.

Juliet Netcher Brennan, Bonds, Matthews, Bonds & Hayes, Muskogee, for appellant.

LAVENDER, Justice.

Two questions are presented for our determination: first, does a court have subject matter jurisdiction to decide a custody issue where none of the prerequisites required for jurisdiction as set forth in the Uniform Child Custody Jurisdiction Act[1] have been met; and two, was there an abuse of discretion in failing to grant father's Motion for New Trial. We rule the answer to both questions is no.[2]

Herein are the pertinent facts. Sometime in January, 1988, Robin Ann Joliff (Appellee/mother) moved to Muskogee, Oklahoma with her nine (9) month old daughter. Robin's husband Dennis (Appellant/father) and two (2) and one-half (½) year old son remained in Lewiston, Idaho. In February, 1989, in Muskogee County, Oklahoma mother filed her Petition for Divorce asserting Oklahoma was the home state of the children and requesting she be awarded custody of them. Father, thereafter, filed his Answer and Cross-petition arguing that Oklahoma did not have subject matter jurisdiction over his son in that the boy has never resided in Oklahoma. Father further maintained that it would be in the best interest of both children if he were awarded custody.

The trial court overruled father's objection to jurisdiction. The court reasoned that as it had jurisdiction over the father in the divorce action, it likewise had jurisdiction over the child. Finally, after hearing

---

1. 10 O.S.Supp.1989 § 1600 *et seq.* (now 43 O.S. § 501 *et seq.* (Supp.1990) (hereinafter cited to 1990 section).

2. While father raises a third question for our review, we need not address it based on our ruling here.

evidence, the court granted mother custody of the two children.

Whereupon, father filed a Motion for New Trial asserting error as to the court's exercise of jurisdiction over his minor son. However, prior to this hearing, father filed a Supplemental Motion for New Trial on the basis of newly discovered evidence. This evidence consisted primarily of information obtained from a case worker for the Department of Human Services during an investigation of the mother and her boyfriend. The report contained numerous adverse allegations including child abuse by the boyfriend. Nevertheless, the trial court denied father's motion and maintained custody of the children with the mother.

The Court of Appeals affirmed the lower court's ruling. We previously granted certiorari.

## I.

■ First and foremost, a court must decide whether it has jurisdiction such as would satisfy the UCCJA's jurisdictional prerequisites.[3] The Uniform Child Custody Jurisdiction Act (UCCJA)[4] established mandatory prerequisites for determining *subject matter*[5] jurisdiction in custody cases in Oklahoma.

It is implicit in the scheme of the UCCJA that the court make an initial determination of jurisdiction by express findings of fact before proceeding to the substantive issue of custody. That is because the efficacy of the UCCJA to accomplish its purpose, to avoid the harm that comes to children from competition between states for jurisdiction in custody adjudications, depends upon a judgment that is fully informed—*and valid.* It is only "[a] custody decree rendered by a court of this state which had jurisdiction ... that binds the parties under the UCCJA. It is only a custody decree of a court which "ha[s] assumed jurisdiction under statutory provisions substantially in accordance with [the UCCJA], or *which was made under factual circumstances meeting the jurisdictional standards of [the UCCJA]"* that the courts of another state are bound to recognize and enforce. Thus, a ruling of jurisdiction by a court that is merely conclusory *or that assumes jurisdiction, but is tacit as to the factual basis for that adjudication, does not meet the objectives of the Act.*[6]

"Though, perhaps, parties may waive the statutory jurisdictional predicates, we are mindful that parties may not confer subject-matter jurisdiction on a court when such jurisdiction does not exist."[7] "Juris-

---

3. "The question of whether jurisdiction exists and the question of who should have custody are two entirely different matters." *Holt v. District Court,* et al., 626 P.2d 1336, 1343 (Okla.1981).

4. The UCCJA "is a long-awaited and much-needed attempted solution to a number of troubling problems in the area of domestic relations. The main problems it attempts to address are child snatching and *multi-state jurisdictional squabbles.* It goes at these and other problems in several ways, *but primarily by limiting the jurisdiction of the courts to act in custody matters."* *Holt,* 626 P.2d at 1340.

5. A court must have in personam jurisdiction to enter an order to pay child support. *Kulko v. California Superior Court,* 436 U.S. 84 [98 S.Ct. 1690, 56 L.Ed.2d 132] (1978). The same is not true of a custody determination made pursuant to the UCCJA. A petitioner need not establish that the nonresident spouse has "minimum contacts" with the forum state, *Internat. Shoe Co. v. Washington,* 326 U.S. 310 [66 S.Ct. 154, 90 L.Ed. 95] (1945), to bring an

action under the UCCJA. "Rather, custody is in effect an adjudication of a *child's status,* which falls under the status exception of *Shaffer v. Heitner,* 433 U.S. 186 [97 S.Ct. 2569, 53 L.Ed.2d 683] (1977). A court may therefore adjudicate custody under the [UCCJA] without acquiring personal jurisdiction over an absent party given reasonable attempts to furnish notice of the proceedings." *In re Marriage of Hudson,* 434 N.E.2d 107, 117 (Ind.App.1982), cert. denied 459 U.S. 1202 [103 S.Ct. 1187, 75 L.Ed.2d 433] (1983); see Unif. Child Custody Jurisdiction Act § 12, Commissioners' Note, 9 U.L.A. 149 (1979). *Warwick v. Gluck,* 12 Kan.App.2d 563, 751 P.2d 1042, 1045 (1988) (emphasis added).

6. *Piedimonte v. Nissen,* 817 S.W.2d 260, 266 (Mo. App.1991) (citations omitted) (emphasis added).

7. *Neger v. Neger,* 93 N.J. 15, 459 A.2d 628, 638 (1983); *See also Owens, by and through, Mosley v. Huffman,* 481 So.2d 231, 244 (Miss.1985) ("The UCCJA has no provision in it authorizing jurisdiction simply by presence or consent of the adult contestants."); *In re Marriage of Hop-*

diction exists only if it is in the *child's* interest, not merely the interest or convenience of the feuding parties, to determine custody in a particular state."[8] Thus, adherence to the UCCJA's jurisdictional requirements must be satisfied *before* an Oklahoma court may consider the issue of custody. Further, this is true regardless of whether it is an initial or modification determination. We, therefore, are not bound by the trial court's findings but must independently judge the basis for exercising jurisdiction.

Section 505 of our Act states:

A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

1. This state:

a. is the home state of the child at the time of commencement of the proceeding, or

b. had been the child's home state within six (6) months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; or

2. It is in the best interest of the child that a court of this state assume jurisdiction because:

a. the child and his parents, or the child and at least one contestant, have a significant connection with this state, and

b. there is available in this state substantial evidence concerning the child's present or future care, protection, training and personal relationships; or

3. The child is physically present in this state and:

a. the child has been abandoned, or

b. it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or

4. a. It appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs 1, 2 or 3 of this subsection, or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and

b. it is in the best interest of the child that this court assume jurisdiction.

These prerequisites "are alternative, and if the requirements of any one of the four are met an Oklahoma court has jurisdiction."[9]

As the son has never lived in Oklahoma, obviously home state jurisdiction pursuant to section 505(1)(a) or (b) cannot be a basis for assuming jurisdiction. However, under 505(2)(a) & (b) jurisdiction may exist if the child *and* a contestant have a "significant connection" to the state *and* there is within the state substantial evidence concerning the child's welfare. In this case, the mother sued for divorce in Oklahoma because she now resides here. The Court of Appeals determined that the divorce proceedings constituted a "significant connection" such that it had jurisdiction over the minor son.

Even if it were true that a divorce action would constitute a "significant connection" as between the child, a contestant and the state,[10] 43 O.S.Supp. 1990 § 505(2) further

---

*son,* 110 Cal.App.3d 884, 168 Cal.Rptr. 345 (1st Dist.1980) ("There is no provision in the act for jurisdiction to be established by reason of the presence of the parties or by stipulation or consent.").

8. *Smith v. Smith,* 40 Or.App. 257, 594 P.2d 1292, 1296 (1979).

9. *Holt,* 626 P.2d at 1341. However, even though our statute does not favor one jurisdictional prerequisite over the other, in order for our custody determinations to be entitled to enforcement and nonmodification by a sister

state, a state court must exercise jurisdiction consistent with the Parental Kidnapping Prevention Act (PKPA), 28 U.S.C. § 1738A. The PKPA does favor home state jurisdiction. Though this federal statute was neither briefed nor argued by either party, the statute's preemptive effect on the UCCJA must be acknowledged.

10. However, *see In re Marriage of Ben–Yehoshua,* 91 Cal.App.3d 259, 154 Cal.Rptr 80, 82–83 (5th Dist.1979) (citations omitted) wherein the court stated: "[T]he Uniform Commissioner's Note to the provision in the Uniform Child Custody and Jurisdiction Act (the Act) ... states

holds that there be available in *this* state substantial evidence concerning the child's present or future care, protection, training and personal relationships.... In that the child had never been in Oklahoma prior to the trial court's custody decision, the information required by the statute was not available. Rather, all the information pertaining to the son's present and future care, protection, training and personal relationships was in Idaho. Thus, Oklahoma had no grounds for assuming jurisdiction.

There are alternative instances in which a court may have jurisdiction under the UCCJA. For example, the Act supports a state assuming jurisdiction where no other state has jurisdiction under any of the tests enumerated or where one state has declined to exercise jurisdiction on the grounds that another state is the more appropriate forum. The Court of Appeals impliedly invoked this section as justification for assuming jurisdiction by their observation that there was no custody determination pending in another state court. However, this is not what § 505(4)(a) maintains. Moreover, the facts manifest a different conclusion.

In the present case there is a state that has jurisdiction; Idaho would have both home state and significant contact jurisdiction and there is no intimation that Idaho would decline to exercise it. The fact, therefore, that no proceeding had been initiated in Idaho does not in itself accord Oklahoma the right to assume jurisdiction.

The Court of Appeals held that according to 12 O.S.Supp.1988 § 1277 (now 43 O.S. 1991 § 112) "[a] petition or cross-petition for a divorce ... must state whether or not the parties have minor children of the marriage. If there are such children, the

court: 1. shall make provision for guardianship, custody, medical care, support and education of the minor children...." However, it is a well settled principle of law that a specific statute will always prevail over a general one and section 505 specifically states what prerequisites must be satisfied *prior* to a court assuming jurisdiction to determine custody. Thus, provisions of the Act supersede any contrary decisional and statutory laws.

When considering the relevant jurisdictional grounds for assessing a child custody determination, it is obvious Oklahoma never had subject matter jurisdiction over the son. We therefore, reverse the trial's court custody decree regarding him.[11]

## II.

We affirm the trial court's decision regarding the Supplemental Motion for New Trial filed by the father on the basis of newly discovered evidence in that it was not against the clear weight of the evidence and therefore, not an abuse of discretion.[12] In *DuBoise v. DuBoise*,[13] we opined:

One seeking relief on motion for new trial on the grounds of newly discovered evidence has the burden of establishing that his failure to produce such evidence at the trial was not due to lack of diligence on his part. Failure to make inquiry of persons likely to know the facts constitutes lack of diligence....

There must be a showing that the party with reasonable diligence could not have discovered the evidence in time to produce it at the trial of the case....

[T]he request is discretionary with the court and its denial of the request will not be disturbed in the absence of an abuse of discretion.

in part: 'The submission of the parties to a forum, perhaps for purposes of divorce, is *not sufficient* without additional factors establishing closer ties with the state. Divorce jurisdiction does not necessarily include custody jurisdiction ....'" The exclusive method of determining subject matter jurisdiction in custody [decisions] ... is the Uniform Child Custody and Jurisdiction Act.

11. Likewise, we vacate that part of the divorce decree ordering father to pay child support to

the mother for the minor son until such time as custody is determined in a proper court of law. However, child support awarded the mother for the daughter shall remain unchanged.

12. *See DuBoise v. DuBoise*, 418 P.2d 924 (Okla.1966); *Hunter v. Hunter*, 470 P.2d 1020, 1023 (Okla.1970).

13. 418 P.2d at 927.

Further, in *Hunter v. Hunter*,[14] we held that, "reasonable diligence is meant appropriate action where there is some reason to awaken inquiry and direct diligence in a channel in which it would be successful."

Father grounded his motion in part on a report from the Department of Human Services (DHS) he received after the divorce trial. It is conceivable, however, that father with due diligence could have obtained some of this information contained in the report before the trial. This is not though the decisive factor in affirming the trial court's decision in this case because while it is certainly true that courts "view with disfavor motions for new trial based on newly-discovered evidence ..." and that such motions "should be examined with caution ...,"[15] we likewise view with equal disfavor custody decrees not based on the *best interest* of the child. What we find of greater significance, at least in the present case, is that the trial judge reviewed the information from the DHS report, yet, maintained custody with the mother.

We are mindful of the formidable task a trial court is faced with when rendering a custody decree. Moreover, in the case at bar, it appears from the record that *neither* parent made a particularly favorable impression with the court. Considering this, we are reluctant to reverse the court's findings. However, make no mistake, our first concern is the welfare of the child and though we affirm the trial court in this instance, we do so only under the narrow set of facts presented.

We, therefore, hold that the trial court did not abuse its discretion in refusing to reopen the trial for the additional evidence relevant to the custody decree.[16] As previously stated, the custody of the son must now be adjudicated in Idaho. Should, however, Idaho decline to do so, conceivably Oklahoma could yet acquire jurisdiction under 505(4)(a).

## CONCLUSION

For the reason specified, the Court of Appeals' opinion is VACATED. The trial court's custody decree is REVERSED IN PART and AFFIRMED IN PART.

DOOLIN, HARGRAVE, KAUGER and SUMMERS, JJ., concur.

OPALA, C.J., HODGES, V.C.J., and SIMMS and ALMA WILSON, JJ., dissent.

SIMMS, Justice, dissenting:

Today the majority holds that notwithstanding the fact that both parties to a divorce action have submitted themselves and the subject matter of their divorce to the Oklahoma court, that court is powerless and without subject matter jurisdiction to enter any custodial order involving a child of the marriage who is not and has not been present in Oklahoma. With this conclusion I must respectfully disagree.

Appellant/father, on March 21, 1989, entered a written general appearance in the Oklahoma divorce action reserving time to plead. On March 29, the father filed an answer and cross petition which alleged that the State of Idaho was the home state of the child. However, the answer and cross petition did not make any objection to the Oklahoma district court entertaining the custodial issue regarding the minor child. In fact, the answer and cross petition of the father reads:

"... and that it would serve the best interest and welfare of the minor children for the court to grant custody of said children to the defendant ..."

Appellant's prayer in his cross petition reads:

"... grant and award the care, custody and the control of the minor *children* of the parties to the defendant...."

The record shows that appellant did not raise the question of the court's judicial power to enter a custodial order until immediately before commencement of trial

---

14. 470 P.2d at 1023 (quoting *Levi v. Oklahoma City*, 198 Okla. 414, 179 P.2d 465 (1947).

15. *Hunter*, 470 P.2d at 1023.

16. The record indicates there was a Motion to Modify filed by the Defendant, however, we have no information concerning the status of that motion nor does it affect our decision here.

and after he had requested affirmative relief.

Incident to the divorce action was the issue of custody of two children, one residing in Oklahoma, and one residing in Idaho. Title 43, O.S.1991, § 112 provides:

"A. A petition or cross-petition for divorce, legal separation, or annulment must state whether or not the parties have minor children of the marriage. If there are such children, the court:

I. *shall* make provision for the guardianship, custody, medical care, support and education of the minor children, ..."

As I view the statute, it requires the Oklahoma court, in this case, to make provision for a minor child notwithstanding the fact that he resides outside the state of Oklahoma. In other words, the majority would have the Oklahoma court totally ignore an issue of the marriage simply because that child is not within the state of Oklahoma.

No request was made of the Oklahoma court to invoke the provisions of the UCCJA; appellant objected only to the Oklahoma court entering any type of order concerning the custody and support of the male minor child. This leads to the unacceptable result of having one child of the marriage under a custodial order of the Oklahoma court and the other child being under no custodial order whatsoever.

No custodial proceedings had been commenced in the Idaho court under the provisions of the Uniform Child Custody Jurisdiction Act. We have no competing jurisdictions. Neither had the child been spirited away from Oklahoma or Idaho in an effort to avoid any valid custodial order. The majority holds that the Oklahoma court did not have "subject matter jurisdiction". I respectfully submit the majority is mistaken. The district court had jurisdiction of the parties, the marriage and the incidences of the marriage.

Title 43, O.S.1991, § 505 reads:

"A. A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody termination by initial or modification decree if:

II. It is in the best interest of the child that a court of this state assume jurisdiction because:

(a) the child and his parents or the child and at least one contestant have a significant connection with this state, and

(b) there is available in this state substantial evidence concerning the child's present or future care, protection, training and personal relationships; ..."

The Act further provides in § 505C, that physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine custody. Without question, the District Court of Muskogee County does have jurisdiction in child custody determinations. There is no doubt that the parents of this child had both submitted themselves to the jurisdiction and authority of the Muskogee County District Court, and that there are significant connections with the state by reason of evidence existing in Oklahoma which could have a direct effect on the question of custody.

At this point I believe it is important to note the child was delivered by the father to the mother immediately following the divorce proceeding. Insofar as the record in this case reflects, the child is now a resident of Oklahoma. The grounds of the motion for new trial and accompanying motion to modify relate to alleged acts which were within the knowledge of the Oklahoma Department of Human Services and which might affect the future care, protection and training of the minor child.

General purposes of the UCCJA are set forth in § 502 of the Act. They are to avoid jurisdictional conflict with courts of other states in custody matters; assure that litigation regarding custody of a child take place ordinarily in the state with which the child *and* his family have the closest connection and where *significant* evidence concerning care and protection is readily available.

The father did not request the Oklahoma court to decline to enter any custodial order pertaining to the male child, but instead objected to the Oklahoma court entertain-

ing the custody matter in any form. Appellant argued that the child had no significant contacts with Oklahoma, and that his only significant contacts laid in Idaho, but he did not request the court to invoke the provisions of the UCCJA and request an evidentiary hearing before a proper court in Idaho as authorized by § 521 of the Act.

I do not believe the cases of other jurisdictions relied upon by the majority support its conclusion. The California case of *In re The Marriage of Leslie and Shimshon Ben–Yehoshua*, 91 Cal.App.3d 259, 154 Cal. Rptr. 80 (1979) involved a mother who was a United States citizen and a husband who was a citizen of Israel. The family had lived together in Israel before the mother filed a petition for separation in California after she had been there with the children for only fourteen days. The court issued an ex parte order awarding custody of the children to the mother. Thereafter, without the mother's consent, the husband surreptitiously removed the children, took them to Israel and did not return. He then instituted divorce proceedings in Israel in which he was awarded temporary custody of the children. In that case we had competing custodial orders and, except for the short period they resided in California with their mother, the children had lived their entire lives in Israel. The court there followed the observation of Bodenheimer in the Vanderbilt Law Review, Bodenheimer, Uniform Child Custody Jurisdiction Act (1969) 22 Vand.L.Rev., 1207:

> "As a general proposition the state in which there is the best opportunity to investigate the facts is most qualified to take jurisdiction." *Bodenheimer.* op cit. 22 Vand.L.Rev. at pg. 1221.

Because of competing custodial orders and the fact that Israel had most significant contacts, the California Appellate Court held that the trial court should not have proceeded to determine the custody issue in the divorce action.

The Supreme Court of New Jersey, in *Neger v. Neger*, 93 N.J. 15, 459 A.2d 628 (1983), also was faced with competing custody orders from different jurisdictions when it determined that the New Jersey court should not alter the California decree and held that California was the proper state in which to litigate future custodial disputes between the Negers.

The majority relies, in part, on *Owens, by and through Mosley v. Huffman*, 481 So.2d 231, 244 (Miss.1985), but Owens also involved competing custody orders from different jurisdictions. The Supreme Court of Mississippi refused to give full faith and credit to the custodial orders of Arizona and refused to recognize the termination decree of Texas because no court had ever considered the polestar issue: the best interest of the child. The court observed the trial judge's "most somber obligation" was to "look out for the welfare of this child," and that the chief beneficiary of such a hearing is the child, the benefit to any other party is incidental. The linchpin of the Mississippi court's opinion was that if the Mississippi court had given full faith and credit to the decrees of Arizona and Texas, the child's fate would have been determined without a full blown hearing as to what was in her best interest, which would defeat the purpose of the UCCJA.

The case of *In re Marriage of Hopson*, 110 Cal.App.3d 884, 168 Cal.Rptr. 345 (1980), involved filing a Tennessee custodial decree in California with a competing Arizona decree. Observing that the children had lived in California for a period of eight months, the California court applied the UCCJA and held that at the time proceedings were commenced in Tennessee, the home state of the children was California. The California court in *Hopson* addressed the pivotal issue in these types of cases, i.e., what is in the best welfare of the child? They also recognized a need to give a measure of finality to custodial decree in order to insure a more stable environment for the child.

Oklahoma was the situs of the *only* court with the judicial authority to enter any type of custodial order in divorce case for there was no litigation elsewhere. We are not faced with competing custody orders. By objecting to the Oklahoma court entertaining jurisdiction over the child without commencing an Idaho custody ac-

tion or obtaining an Idaho custodial order, the appellant seeks to determine the issues in the divorce case without giving his son his "day in court" to determine what will be in the child's best interest. With this result I cannot agree. It is to be further observed that custody orders in divorce cases are directed to the parties of the divorce. They are enforced by threat of contempt over the parents and not the children.

As far as the record in this case shows, the child is now and has been since the entry of the divorce decree, a resident of the State of Oklahoma. The evidence which appellant/father alleges to show the unfitness of mother lies exclusively within the boundaries of Oklahoma. This alleged evidence might or might not have an effect on what is in the best interest of the child. I believe the District Court of Muskogee County had the judicial authority to proceed with its custodial orders and should now proceed to hear the motion to modify which it reserved at the time it overruled appellant's motion for new trial.

For the above reasons, I respectfully dissent.

I am authorized to state that Vice Chief Justice HODGES and Justice ALMA WILSON concur in the views expressed herein.