2001 OK CIV APP 115

Evan WOOD, Plaintiff/Appellee,

v.

Marilyn REDWINE, Defendant/Appellee.

No. 94,366.

Court of Civil Appeals of Oklahoma, Division No. 1.

Aug. 24, 2001.

18. *Gaines v. Sun Refinery and Marketing,* 1990 OK 33, 790 P.2d 1073.

**54**

Charles O. Schem, Oklahoma City, OK, for Appellant.

Virginia Henson, Shawnee, OK, for Appellee.

JOPLIN, Judge:

¶1 Marilyn Darlene Redwine (Mother) seeks review of the trial court's order granting custody of the parties' minor child (Child) to Evan Dean Wood (Father). In this appeal, Mother challenges the trial court's assumption of jurisdiction as improper, and its determination of custody as affected by an abuse of discretion. Finding no reversible error in the trial court's assumption of jurisdiction, but finding the trial court abused its discretion in granting custody to Father, we hold the order of the trial court should be reversed.

¶2 From the record, it appears that while Mother and Father cohabited in Colorado, Child was born in 1992. In 1996, when Child was approximately 3½ years old, Father moved to Oklahoma; Mother remained in Colorado, living with or near her mother.

¶3 For about the next 3 years, Father had little contact with Child and paid—what can only be charitably termed—less than bare minimum child support. Mother consequently sought child support assistance from the State of Colorado. Colorado provided some assistance and apparently sought reimbursement from Father.

¶4 In June 1998, Child visited Father in Oklahoma for the first time. Sometime in 1999, Mother moved to Utah, and sought child support assistance from that state. That same year, Father again sought and obtained from Mother agreed-to summer visitation with Child.

¶5 In August 1999, Father refused to return Child to Mother at the end of his summer visitation. Instead, Father commenced the instant action, seeking to establish paternity, and to obtain custody of Child and child support, on the allegation that Child was a

resident of this state. Mother entered a special appearance and objected to jurisdiction, arguing Oklahoma was not Child's "home state."

¶ 6 The trial court overruled Mother's jurisdictional challenge, but allowed Child to return with Mother to Utah pending further proceedings with provisions for Father's visitation with Child on request and notice to Mother. Father apparently attempted to visit Child in October 1999, but—apparently on advice of her then-counsel-Mother refused to allow visitation for Father's failure to give the notice prescribed by the trial court.

¶ 7 After a hearing on the merits in early December 1999, the trial court awarded custody of Child to Father, ordered Mother to pay child support, and directed Mother to relinquish physical custody of Child to Father on Christmas day. Mother appeals.

¶ 8 As our Supreme Court has duly noted, "The question of whether jurisdiction exists and the question of who should have custody are two entirely different matters." *Holt v. District Court for the Twentieth Judicial District, Ardmore, Carter County*, 1981 OK 39, ¶ 23, 626 P.2d 1336, 1343. In this regard, the statutory jurisdictional scheme of the Uniform Child Custody Jurisdiction and Enforcement Act, *43 O.S. Supp. 1998 §§ 551–101* et seq., provides in pertinent part:

A. Except as otherwise provided in [§. 551_204], a court of this state has jurisdiction to make an initial child custody determination only if:

1. This state is the home state of the child on the date of the commencement of the proceeding, *or* was the home state of the child within six (6) months before the commencement of the proceeding and the child is absent from this state, but a parent or person acting as a parent continues to live in this state;

2. A court of another state does not have jurisdiction under paragraph 1 of this subsection, *or* a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum on the ground that this state is the more appropriate forum under

[§ 551_207 or § 551_208, i.e., because of inconvenient forum or "unjustifiable conduct" by the party seeking to invoke jurisdiction], *and*

a. the child and the child's parents, *or* the child *and* at least one parent … have a significant connection with this state other than mere physical presence, *and*

b. substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;

3. All courts having jurisdiction under paragraph 1 or 2 of this subsection have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under [§ 551_207 or § 551_208, i.e., because of inconvenient forum or "unjustifiable conduct" by the party seeking to invoke jurisdiction]; *or*

4. No court of any other state would have jurisdiction under the criteria specified in paragraph 1, 2, or 3 of this subsection.

*43 O.S. 551–201.* (Emphasis added.)

¶ 9 Applying these provisions to the present case, it is clear from the outset that Oklahoma is not the home state of Child for purposes of jurisdiction under (A)(1), as "home state" is defined by § 551–102. In the present case, Mother and Child lived in Colorado for substantially all of Child's life preceding Mother's move to Utah in 1999. Mother lived in Utah over five months prior to commencement of the Oklahoma proceedings, Child attended Utah schools, and Mother sought child support assistance from Utah. Child visited Father in Oklahoma only during the previous two summers for a limited period of time which did not—even in combination—amount to six months in duration. The Oklahoma courts consequently have no (A)(1) "home state" jurisdiction.

¶ 10 Subsection (A)(2) permits the exercise of jurisdiction only if (1) a court of another state does not have "home state" jurisdiction or has declined to exercise jurisdiction; *and* (2) the child has significant connections with Oklahoma; *and* (3) there is available in Oklahoma substantial evidence concerning the

child's welfare. Having reviewed the record submitted, we find no evidence whatsoever to establish either Child's significant connection with Oklahoma beyond Child's limited presence during two visitation periods, or the availability of substantial evidence concerning Child's past and future care, education, and safety in Oklahoma, Child having lived with Mother in Colorado or Utah since birth. See, *Joliff v. Joliff,* 1992 OK 38, ¶ 9, 829 P.2d 34, 37–38 [1]; *Matter of Guardianship of Walling,* 1986 OK 50, ¶ 14, 727 P.2d 586, 591.[2]

¶ 11 In the present case, Mother moved from Colorado to Utah in 1999. Child was returned to Mother in Utah and attended school in that state before the trial court entered its order assuming jurisdiction and awarding Father custody. Considering Mother and Child's significant connections with Utah and Colorado, and lack of connections to Oklahoma, we consequently find no Oklahoma jurisdiction under (A)(2).

¶ 12 Under (A)(3), the Oklahoma courts may exercise jurisdiction only if another court having jurisdiction under provisions substantially similar to (A)(1) or (2) has declined to exercise jurisdiction under inconvenient forum or unreasonable conduct provisions similar to § 551–207 and § 551–208.[3] In the present case, no other state with jurisdiction has declined to exercise jurisdiction, and the failure of the parties to seek the jurisdiction of another state's courts is not dispositive. See, *Joliff,* 1992 OK 38, ¶ 11, 829 P.2d 34, 38 ("The fact . . . that no proceeding had been initiated in [the child's 'home state'] does not in itself accord Oklahoma the right to assume jurisdiction.") Therefore, we find no Oklahoma jurisdiction conferred under (A)(3).

¶ 13 Finally, the Oklahoma courts may exercise jurisdiction under (A)(4) only if no other state has jurisdiction under (A)(1), (2), or (3). Uniform Child Custody Jurisdiction Act (1968), § 3, comment [4]; Uniform Child Custody Jurisdiction and Enforcement Act (1997), § 201, comment.[5] On the specific record tendered for our review, inasmuch as it appears neither Oklahoma, Colorado nor Utah [6] could properly exercise jurisdiction

---

1. "Even if it were true that a divorce action would constitute a 'significant connection' as between the child, a contestant and the state, *43 O.S. Supp.1990 §§ 505* (2) [now § 551–201(A)(2)] further holds that there be available in this state substantial evidence concerning the child's present or future care, protection, training and personal relationships. . . . In that the child had never been in Oklahoma prior to the trial court's custody decision, the information required by the statute was not available. Rather, all the information pertaining to the son's present and future care, protection, training and personal relationships was in Idaho. Thus, Oklahoma had no grounds for assuming jurisdiction."

2. "Present and future care is determined largely on the basis of past care. The majority of the witnesses who know the parties well are located in Oklahoma. The interests of the children are best served when the court has optimum access to relevant evidence about the child and the family. The UCCJA encourages that there be maximum rather than minimum contacts with the state. It is apparent that the best information on past conduct and fitness of the parent and grandparents exists in the state of Oklahoma."

3. Section 551–208 directs the Oklahoma courts to "decline to exercise its jurisdiction" "if a court of this state has jurisdiction under this act because a person seeking to invoke its jurisdiction has engaged in unjustifiable conduct." Section 551–207 permits "[a] court of this state which

has jurisdiction under this act . . . [to] decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum" "upon the motion of a party, the court's own motion, or request of another court," and considering all relevant factors including the length of time the child resided in another state; the distance between the states; the nature and location of evidence regarding the child; and the familiarity of the court of each state with the facts and issues. In the present case, however, the trial court conducted no such inquiry.

4. "Paragraph (4) of subsection (a) provides a final basis for jurisdiction which is subsidiary in nature. It is to be resorted to only if no other state could, or would, assume jurisdiction under the other criteria of this section."

5. "This section provides mandatory jurisdictional rules for the original child custody proceeding. It generally continues the provisions of the UCCJA § 3. . . . Paragraph (a)(4) retains the concept of jurisdiction by necessity as found in the UCCJA and in the [Parental Kidnapping Prevention Act]. This default jurisdiction only occurs if no other State would have jurisdiction under subsections (a)(1) through (a)(3)."

6. The trial court must have implicitly reasoned that Colorado could not be the "home state" because the evidence does not clearly show that

under any of the first three jurisdictional requisites of the UCCJEA, the trial court in the present case must have assumed jurisdiction under the (A)(4) default provision.[7]

¶ 14 The jurisdictional provisions of the UCCJA—and by implication, the successor provisions of the UCCJEA—seek to assure that litigation regarding custody of a child take place in the state with which the child *and* his family have the closest connection and where significant evidence concerning care and protection is readily available in order to provide a continuing stable environment for children. See, *Joliff,* 1992 OK 38, ¶ 9, 829 P.2d at 37; *Matter of Guardianship of Walling,* 1986 OK 50, ¶ 14, 727 P.2d at 591. Thus, while we cannot say the trial court erred in assuming jurisdiction, we remain mindful of the spirit and intent of the UCCJA and the UCCJEA in reviewing the trial court's grant of custody to Father.

¶ 15 An award of custody of a minor child may be reversed on appeal if either contrary to the clear weight of the evidence concerning the child's best interest, or affected by an abuse of discretion. *Manhart v. Manhart,* 1986 OK 12, 725 P.2d 1234 (weight of the evidence); *Davis v. Davis,* 1960 OK 196, 355 P.2d 572 (abuse of discretion). In an initial custody determination, the trial court must take into consideration, among other factors, which parent is most likely to facilitate contact between the child and the non-custodial parent, but the paramount consideration in determining custody is the best interest of the child. 43 O.S. 112; *Frankovich v. Frankovich,* 1969 OK 151, 459 P.2d 583.

¶ 16 In the present case, the uncontroverted evidence showed that Child was raised by Mother in Colorado since Child's birth and for the approximately three years during which Father lived with Mother. After Fa-

ther's move to Oklahoma, Mother raised Child on her own for several years until she began an integrated family unit with her significant other, Kevin, his child, Mother's two older children, and Child. This unit apparently thrived for the ensuing year and one-half as Child is by all accounts bright, personable, and well-adjusted. A witness who observed the family unit one to three times per week-including babysitting—testified that the family unit was "secure," "happy," "playful," "loving but firm," "peaceful," and "organized." Kevin testified to a committed relationship with the family unit. Mother testified regarding the day-to-day activities of Child and family.

¶ 17 On the other hand, Father testified he had lived in his present residence only since Child began visitation in June 1999, and had recently relocated his employment from Tulsa to the Oklahoma City area. Father's only other testimony consisted of complaining of the alleged difficulties in electronic mail and telephone contact with Child. Father adduced no direct evidence or testimony showing how Child's best interests would be served by granting him custody.

¶ 18 Child testified she wanted to live with Mother but enjoyed visiting Father, although Child missed her siblings and liked her home in Utah with the family unit. Although Father averred Mother's attempted interference with telephone contact with Child, Child explained she had lost the telephone credit card provided by Father, and that Mother encouraged Child to weekly correspond with Father by electronic mail.

¶ 19 On the issue of post-petition visitation, the evidence suggests the trial court allowed Father to request visitation—pending resolution of the custody matter—upon two weeks notice to Mother. The evidence also suggests that Father requested visitation about twelve days in advance, and that Mother—

---

Mother or Child lived in Colorado at the time of the commencement of this proceeding. It would appear Utah could not be the "home state," as the evidence is conflicting on how long, if at all, Child ever lived in that state before commencement of these proceedings.

7. While we are concerned application of (A)(4) under the circumstances of this case permits a state without substantial connections to a child,

and without substantial evidence concerning the child's past, present and future care, to assume jurisdiction merely because the custodial parent relocated during the child's visitation with the non-custodial parent—and thereby encouraging a race to the local courthouse by the out-of-state non-custodial parent—this nevertheless is the letter of the law.

heeding advice of counsel and the terms of the trial court's order—refused to allow the October 1999 visitation for lack of proper notice.

¶ 20 On consideration of the evidence, the trial court specifically found both Mother and Father fit and with equal standing to seek custody, with Mother presumed to be the custodial parent. However, the trial court further found:

> The biggest difference, and it outweighs all the other differences by a substantial margin in the eyes of the Court is which party will provide the most meaningful contact with the non-custodial party.... Because of the difficulties that [Father] has had during those two years that [Mother] complains of, although it has gotten better during the last two years, and particularly based upon the unfortunate incident during the Halloween attempted visitation, the Court finds that the best interests of this child would be served by placing her in the exclusive care, custody and control of [Father] ... [Mother] to have the right of reasonable visitation as the parties may agree ...

The trial court consequently granted custody of Child to Father. The trial court also ordered Mother to pay $147.00 per month child support, and relinquish custody of Child to Father on Christmas day.

¶ 21 In the present case, the trial court permitted Father's visitation *pendente lite* on two weeks notice to Mother. Father admits he informed Mother the Monday after the Friday, October 6th hearing that he would be in Colorado for a court hearing—apparently regarding his unpaid child support—and wanted to see Child. Several e-mails entered into evidence support Mother's testimony that she informed Father to work out

visitation through counsel, and at no time attempted to restrict Father's contact with Child. That Mother ultimately refused visitation on this one occasion [8]—apparently on the advice of counsel, and although not necessarily condoned by this Court—should not and cannot form the basis for granting custody to Father if Child's best interests are not otherwise served.

¶ 22 Moreover, Mother voluntarily allowed Child and Father extended summer visitation for two years, although Father had not previously played an active role in Child's life, and the trial court acknowledged visitation had improved. Child by all accounts is thriving with her Utah family and expressed an unambiguous preference to live with Mother and Child's siblings while retaining visitation with Father. In short, on the specific record before us we find the trial court's inordinate reliance on the "unfortunate incident" during the botched October visitation constitutes an abuse of discretion. We further find no evidence on the specific record before us that Child's best interests would be served by removing her from Mother and siblings, a life with which Child is familiar and content.

¶ 23 Accordingly, we find the trial court's order granting custody of Child to Father against the clear weight of the evidence and affected by an abuse of discretion. The order of the trial court is consequently REVERSED.

¶ 24 ADAMS, P.J., and JONES, J., concur.

---

8. Perhaps Mother would have felt more comfortable with Father's visitation without benefit of advice of counsel had Father returned Child following summer visitation.