2009 OK CIV APP 55

**Rhonda NORMAN and Cody Norman, Plaintiffs/Appellants,**

v.

**MERCY MEMORIAL HEALTH CENTER, INC., Defendant/Appellee.**

No. 104,551.

Court of Civil Appeals of Oklahoma, Division No. 4.

Feb. 24, 2009.

Rehearing Denied April 3, 2009.

Certiorari Denied June 8, 2009.

Rick W. Bisher, John K.F. Langford, Ryan Bisher Ryan, Oklahoma City, OK, for Plaintiffs/Appellants.

Stephen Peterson, Michael S. McMillin, Fenton Fenton Smith Reneau & Moon, Oklahoma City, OK, for Defendant/Appellee.

DOUG GABBARD II, Presiding Judge.

¶ 1 Plaintiffs/Appellants, Rhonda Norman and Cody Norman, appeal a judgment entered in favor of the Defendant/Appellee, Mercy Memorial Health Center, Inc. (Hospital) following a non-jury trial.[1] After review, we reverse and remand for a new trial.

## BACKGROUND

¶ 2 In July 2001, Plaintiff Rhonda Norman (Rhonda) was admitted to Hospital for laparoscopic abdominal surgery. She was discharged the same day and went home. Later the same day, she returned to Hospital complaining of pain in her right shoulder. It was determined that she had a Type II posterior labrial tear injury to her shoulder.

¶ 3 Plaintiffs sued Hospital for malpractice claiming that Rhonda had sustained the shoulder injury during the surgery, while she was unconscious, and as a result of Hospital's negligence. Cody Norman, her husband, sued for loss of consortium.

¶ 4 The case was tried over several days between August 29, 2006, and February 20, 2007. At trial, Plaintiffs presented no direct evidence that any Hospital employee dropped her arm during the surgery or otherwise caused her injury. However, they presented evidence that Rhonda's shoulder was not injured before the surgery: She testified that she had sustained no pre-operative injury and had no pre-operative pain in the shoulder, and she presented evidence that doctors had examined her shoulder four days before the surgery and found no injury, swelling, or tenderness. Plaintiffs' evidence indicated that Rhonda reported pain in the shoulder immediately after the surgery. They also presented records and testimony from physicians treating the shoulder that dropping of the arm during surgery can cause such an injury. However, Plaintiffs presented no evidence that Rhonda's injury was caused to a reasonable degree of medical certainty by such negligence. In fact, the physician who operated on Rhonda's shoulder agreed that it would be speculation for him to offer an opinion as to whether his patient's injury was caused during the abdominal surgery or was something chronic, pre-existing, and occurring over time.[2]

¶ 5 Hospital denied negligence and claimed that it used due care to prevent such an injury. Hospital's expert testified that the evidence relating to Rhonda's shoulder injury was inconsistent with an arm dropping injury during surgery.[3] He also testified that her shoulder pain was a classic referred pain from the surgery.[4]

¶ 6 At the conclusion of the trial, the court found in favor of Hospital, stating:

[T]he Court finds as follows: 1) The burden is on the plaintiff to prove the actions of the defendant caused her injury; 2) The plaintiff relies on the doctrine of *res ipsa loquitur* to prove her cause of action; 3) As of this time, the plaintiff has come nowhere close to persuading the trier of fact that an accident occurred while Ms. Norman was under the defendant's control; 4) Dr. [Tandy] Freeman [5] has no way of knowing how the plaintiff's alleged injury occurred. Assuming that Dr. Freeman will testify that her injury is consistent with having her arm drop, he would be unable to testify whether in fact those events happened.

1. The record indicates that the case was not tried to a jury because the jury fee was not paid. This resulted in rescheduling the original trial date from April 3, 2006, to April 24, 2006.

2. Deposition of Richard Alan Greisman, M.D., Plaintiffs' Exhibit 1, pages 95–96.

3. Transcript, pages 131–176.

4. Transcript, page 166.

5. *See* discussion below concerning a protective order granted by the trial court preventing Plaintiffs from deposing Dr. Freeman more than once.

I don't know why Ms. Norman had shoulder pain after the surgery; I don't have an explanation for that, but in order to prevail, the plaintiffs must prove that they dropped her during the surgery. There's no evidence of that. So———the evidence is to the contrary; so, Court finds for the defendant.

¶ 7 Plaintiffs appeal.

## STANDARD OF REVIEW

■■ ¶ 8 Whether a cause presents a case for application of the doctrine of *res ipsa loquitur* presents a question of law. *Harder v. F.C. Clinton, Inc.,* 1997 OK 137, ¶ 9, 948 P.2d 298, 303. Likewise, the trial court's legal rulings pertaining to the conduct of the trial and the protective order also present questions of law. Questions of law are reviewed *de novo. Hill v. Blevins,* 2005 OK 11, ¶ 3, 109 P.3d 332, 334.

## ANALYSIS

### A. The conduct of the trial

¶ 9 Plaintiffs first assert that the conduct of the trial in segments, over such a long time period, constitutes reversible error.

■■ ¶ 10 While we do not condone the conduct of a non-jury trial over a lengthy time period, we note that Plaintiffs failed to object to any of the continuances of the trial. Issues not properly presented to the trial court cannot be considered by the Court on appeal. *Steiger v. City Nat'l Bank of Tulsa,* 1967 OK 41, 424 P.2d 69.

¶ 11 Moreover, Plaintiffs do not assert, nor does the record reveal, any prejudice resulting from the delay. Accordingly, under the facts of the case, we find any error harmless and an insufficient basis for reversal. *See* 20 O.S.2001 § 3001.1.

### B. The protective order

■■ ¶ 12 Plaintiffs also assert the trial court abused its discretion in granting a protective order which prevented them from taking a *second* "trial" deposition of Dr. Tandy Freeman, one of Rhonda's treating physicians.

■■ ¶ 13 Abuse of discretion involves a clearly erroneous conclusion and judgment. *Okla. Turnpike Auth. v. Horn,* 1993 OK 123, ¶ 6, 861 P.2d 304, 306. We find no such abuse in this case. Dr. Freeman's testimony was presented to the court by way of a discovery deposition and there was no evidence he would have testified differently in a second deposition. Dr. Freeman testified that he could not give an expert opinion on causation or standard of care, and the discovery deadline had passed in a case which had been filed for more than two years. Plaintiffs' assertion that the parties had an agreement for a second "trial" deposition was unsupported by any proof. Finally, although we agree that a deposition prepared exclusively for a trial may sometimes be more effective in persuading a jury than a "discovery" deposition, this matter was tried to the court. We are unable to find that Plaintiffs were prejudiced by the protective order.

### C. Res ipsa loquitur

■■ ¶ 14 Generally, expert testimony that a doctor or hospital deviated from the standard of care is necessary to establish causation in a professional liability case. *See White v. Burton,* 1937 OK 381, 71 P.2d 694; *Harder v. F.C. Clinton, Inc.,* 1997 OK 137, 948 P.2d 298. The rationale for this rule is that a trier of fact must have sufficient technical and scientific evidence at his or her disposal to answer scientific or technical questions of fact. However, when a doctor or a hospital's lack of care has been such that common knowledge or the experience of laymen is extensive enough to recognize or infer negligence from the facts, expert medical testimony is not required.[6] *Boxberger v.*

---

6. Even when expert medical testimony is necessary to establish the proper standard of care, the trier of fact may consider all the evidence in determining whether the doctor or hospital met the requisite standard. Causal connection may be proved by circumstantial evidence if the evidence has sufficient probative force to constitute the basis for a legal inference, rather than mere speculation. In other words, the circumstances proved must lead to the conclusion with reasonable certainty and probability. *See Boxberger v. Martin,* 1976 OK 78, 552 P.2d 370.

*Martin,* 1976 OK 78, 552 P.2d 370. Expert medical evidence is not required to establish the cause of an objective injury where there is competent evidence, without such testimony, to establish the cause with reasonable certainty. In *Barnett v. Richardson,* 1966 OK 101, ¶ 4, 415 P.2d 987, 990, the Supreme Court stated:

> Where an injury is patent, objective rather than subjective, the plaintiff is competent to testify as to the injury, the treatment received therefor, and the reaction of such treatment, and this testimony is sufficient for the jury to render a verdict ... and no expert medical testimony is necessary.

¶ 15 The common law referred to this rule as *res ipsa loquitur,* a Latin phrase meaning "the thing speaks for itself." The rule has long been followed by Oklahoma courts. *See, e.g., Lawton Coca–Cola Bottling Co. v. Shaughnessy,* 1949 OK 149, 216 P.2d 579; *Indep. Eastern Torpedo Co. v. Gage,* 1951 OK 320, 240 P.2d 1119. It was designed to aid plaintiffs in making a prima facie case of negligence where direct proof was beyond their power and control, but within the power of the defendant.

¶ 16 The Oklahoma Legislature codified this doctrine, as least as it applies to medical malpractice, in 1976. Title 76 O.S.2001 § 21 provides:

> In any action arising from negligence in the rendering of medical care, a presumption of negligence shall arise if the following foundation facts are first established:
> 1. The plaintiff sustained any injury;
> 2. Said injury was proximately caused by an instrumentality solely within the control of the defendant or defendants; and
> 3. Such injury does not ordinarily occur under the circumstances absent negligence on the part of the defendant.
> If any such fact, in the discretion of the court, requires a degree of knowledge or skill not possessed by the average person, then in that event such fact must be established by expert testimony.

¶ 17 The Oklahoma statute slightly alters the common law rule. Instead of applying an *inference* of negligence, it establishes a *presumption* thereof. It also differs from the common law rule by not requiring a plaintiff to show the particular circumstances which caused the injury. *Sisson By and Through Allen v. Elkins,* 1990 OK 123, 801 P.2d 722. For the rule to apply in a given medical malpractice case, a plaintiff need only prove the three numbered foundational requirements. *Middlebrook v. Imler, Tenny & Kugler, M.D.'s, Inc.,* 1985 OK 66, 713 P.2d 572.

¶ 18 Here, the record reflects evidence establishing each foundational requirement: (1) Plaintiff sustained a posterior labrial tear injury to her shoulder; (2) Plaintiff testified and presented medical evidence that her shoulder was not injured before the surgery, and reported her injury immediately after the surgery—compelling evidence that Plaintiff's injury was sustained during the surgery by an instrumentality solely within the control of the defendant or defendants; and (3) Hospital presented evidence that exercising the proper standard of care prevents the occurrence of such an injury during surgery.

¶ 19 As noted above, the doctrine of *res ipsa loquitur* was designed to aid plaintiffs in making a prima facie case of negligence where direct proof was beyond their power and control, but within the power of the defendant. This is precisely the type of case for which the rule was designed: Plaintiffs presented proof that Rhonda was unconscious when she sustained her injury, and direct proof of the event was solely within the power and control of Hospital. Common knowledge infers negligence from these facts. In reaching its decision, the trial court failed to apply a presumption of negligence which would have shifted the burden of proof to Hospital. *See Harder v. F.C. Clinton, Inc.* at ¶ 8, 948 P.2d at 303. The court's failure to do so prevented it from properly weighing the evidence.

## CONCLUSION

¶ 20 For these reasons, the judgment in favor of Hospital is reversed and this cause is remanded for a new trial.

¶ 21 **REVERSED AND REMANDED FOR A NEW TRIAL.**

BARNES, J., concurs, and RAPP, C.J., dissents.