IN RE THE MARRIAGE OF JONES



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:IN RE THE MARRIAGE OF JONES

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 IN RE THE MARRIAGE OF JONES
2018 OK CIV APP 68
Case Number: 115481
Decided: 10/29/2018
Mandate Issued: 11/28/2018
DIVISION III
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION III
Cite as: 2018 OK CIV APP 68, __ P.3d __

 

IN RE THE MARRIAGE OF GREGORY ROBERT JONES AND SAMANTHA LYNN WHITE:

GREGORY ROBERT JONES, Petitioner/Appellee,
v.
SAMANTHA LYNNE WHITE, Respondent/Appellant.

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA

HONORABLE RICHARD OGDEN, TRIAL JUDGE

AFFIRMED IN PART, REVERSED IN PART
AND REMANDED FOR FURTHER PROCEEDINGS

Steven E. Ferguson, CRABB, FERGUSON & RIESEN, Oklahoma City, Oklahoma, for Petitioner/Appellee,

Andrew R. Swartzberg, THE SWARTZBERG LAW GROUP, P.L.L.C., Oklahoma City, Oklahoma, for Respondent/Appellant.

Barbara G. Swinton, Presiding Judge:

¶1 Samantha White (Mother) appeals a trial court order finding Oklahoma has jurisdiction, dissolves the marriage between her and Gregory Jones (Father), and awards the parents joint custody of their two minor children with Father as primary custodian. We conclude jurisdiction in this child custody proceeding is contrary to Oklahoma's Uniform Child Custody Jurisdiction and Enforcement Act (OUCCJEA), 43 O.S. 2011 §§ 551-101 et seq. as applied to the record evidence. The dissolution of the marriage is affirmed but in all other respects, the order is reversed.

Facts Relevant to Jurisdiction

¶2 Mother and Father were married on February 14, 2012 in Las Vegas, Nevada. During their relationship two children were born, M.R.J and J.R.J. (the children). The family lived in Massachusetts with Father's adopted father between 2010-2012, then moved to New Hampshire for six months, and returned to the grandfather's home in Massachusetts where they resided until early 2015. Because Father wanted to find better work as a welder and to come back to his roots, the parties agreed to move to Oklahoma. The family arrived in Oklahoma City on or about March 2, 2015, where they resided with Father's aunt for six weeks and then moved into their own home in Del City, Oklahoma.

¶3 On or about May 19, 2015, the family traveled to New Hampshire for the funeral of Mother's grandfather. During their visit Mother told Father she wanted a divorce. She and the minor children remained at her mother's house, and Father returned to Oklahoma alone.

History of the Case

¶4 On May 27, 2015, Father filed a petition for separate maintenance alleging incompatibility, seeking a decree and equitable distribution of the parties' property. He also filed an application for temporary order, seeking an automatic temporary injunction and custody of the parties' two children, almost 4 and 3 years old at that time. Neither the petition nor the application includes the current location and addresses for the last five years for the minor children as required by § 551-209(A).[1]

¶5 The hearing on Father's temporary custody order was held July 16, 2015. The court minute reflects Mother did not appear, Father was awarded custody of the minor children, Mother was awarded standard visitation, and child support was reserved. The "Court Order" filed July 29, 2015, repeats the court minute findings. There is no indication in the order or anywhere in the record that Father informed the trial court that the next weekday after Mother was served in New Hampshire, she filed for and obtained a Victims Protection Order (VPO) based on allegations of domestic abuse by Father, that he appeared at the scheduled hearing, or its status of the VPO at the time of the temporary order hearing.

¶6 On August 25, 2015, Father applied for and the trial court approved an Order Nunc Pro Tunc, which amended the July 29, 2015, Order by correcting the initials of one of the minor children. The Order Nunc Pro Tunc was filed August 25, 2015.

¶7 The record demonstrates Father obtained the children from Mother in mid-September, 2015, after help from his relatives and the local sheriff. It is undisputed that Mother had no prior notice of the temporary custody order until she was given a copy the day the minor children were removed from her custody.

¶8 On October 21, 2015, Mother filed a Motion to Vacate Custody and Support Order, contending "Oklahoma lacks jurisdiction pursuant to 43 O.S. § 551-201," because "the minor children were not residents of Oklahoma for six months before the commencement of the proceeding" and "Massachusetts has jurisdiction over the children." No response was filed.

¶9 By order filed December 21, 2015, the trial court granted Mother visitation over the Christmas holiday from 6 p.m. December 27, 2015 until January 4, 2016. On January 8, 2016, Mother filed a Motion to Modify Temporary Order filed July 29, 2015, alleging "substantial and material changes"[2] since the order was "entered by default." Mother further alleged "at the time Father knew [she] was living out of state and would be unable to exercise standard visitation with the minor children." The Certificate of Delivery states the notice of the motion hearing was faxed to Father's counsel on January 8, 2016.

¶10 The hearing on Mother's motion to modify the temporary custody order was held January 13, 2016. As noted therein, counsel announced and the trial court approved the parties' agreement for joint custody with rotating 6-week periods (first rotation scheduled to begin January 15 and last rotation would end August 12, 2016). The parties also agreed that "the receiving party shall pay transportation expenses" and "shall have a 1 day window for transportation w[ith] 7 days notice."

¶11 On January 29, 2016, Father filed an "Amended Petition for Divorce" based on the parties' incompatibility.[3] He alleged the facts of his marriage to Mother, birth of their two minor children in Massachusetts, and that "[b]oth parties have resided in Oklahoma for more than six consecutive months immediately preceding the filing hereof." In a separate paragraph, Father alleged the court has jurisdiction "to hear and determine all issues pertaining to the [parties'] minor children" because "Oklahoma is the 'home state'... as that phrase is defined by [OUCCJEA]."[4] The paragraph intended for the minor children's residences for the past five years was left blank. Father requested, inter alia, an order for Mother to pay child support and for equitable division of the marital estate and debts.

¶12 On Feb. 23, 2016, the Journal Entry that details the parties' temporary joint custody agreement with the rotating 6-week schedule was filed. An order for appointment of a Guardian ad Litem (GAL) for the children was filed March 16, 2016.

¶13 On June 30, 2016, Mother filed a "Response and Cross-Claim" (Answer and Cross-Petition). Her Answer admits Father's jurisdictional allegations, i.e., "both parties have resided in Oklahoma for six consecutive months" and "Oklahoma is the home state under the [OUCCJEA]...," which same allegations she re-alleges in her Cross-Petition.

Hearing on Jurisdiction

¶14 At the one-day hearing on August 16, 2016, the trial judge requested counsel to announce what had first been brought to his attention that morning in chambers -- "a jurisdictional issue." Mother's counsel stated no response had been filed to her motion to vacate the temporary custody order, but he thought the issue had been waived based on the parties' court-approved, temporary joint custody agreement and their subsequent pleadings that admitted Oklahoma has home state jurisdiction. The trial court asked to explain her admission, to which Mother's counsel responded, "my client would like to get this wrapped up today, would like to get it wrapped up in Oklahoma."

¶15 After asking if a hearing on his client's motion to vacate had been set and learning the reasons why there had been no hearing on the motion to determine jurisdiction,[5] the trial judge voiced his concern that Father "has yet had the opportunity to respond to the jurisdictional challenge." Father's counsel responded, "quite frankly, we thought it was waived because we entered an agreement and then I filed my amended...petition for divorce ... they agreed it's home state ... [in] a counter request for divorce in this Court."

¶16 After reminding counsel of his conversation with them in his chambers that morning,[6] the trial judge stated "the UCCJEA governs these jurisdictional disputes." He inquired specifically about and was then told by Mother's counsel that "Nothing has been filed in any other jurisdiction." Through direct questions to Father, the trial judge next established that he still resides in Oklahoma and that Mother resides in Massachusetts.

¶17 The trial judge asked Mother about how long she had lived in that state, to which she replied, "about a year." After swearing in both parties, the judge's questions to Mother established that on May 27, 2015, she "was staying with her mother in New Hampshire" where she had been "about a month," and three months before that, Mother and the children were in Oklahoma, and before that, they were in Massachusetts for about five years.

¶18 The judge's questions to Father established the parties had lived together in Oklahoma and that they moved here "on March 1st, 2015, we lived [here] from March 1st until we went to her grandfather's funeral on May 19th where she did not return back to Oklahoma." The judge asked, "where was the child?" Father responded, "With her."

¶19 At the same hearing, the GAL reminded the court that subject matter jurisdiction cannot be waived, and the trial judge responded "even if it cannot be waived, there still has to be determination as to what state has jurisdiction." Counsel for the parties and the GAL agreed with the trial court's conclusion that "this matter has not been properly presented to the Court" and "the motion challenging jurisdiction should have been heard well before today."

¶20 The judge next asked Mother "Tell me how it is that you signed a verified petition swearing that the allegations contained therein on June 30, 2016, paragraph 3-A, which you state Oklahoma is the home state." She replied, "I tried to file in Massachusetts." The trial judge stated, "No you need to answer my question. Why did you do that?" Mother replied, "I thought it was the home state, sir." The trial judge stated, "This is Court's Exhibit No. 1. All right. We're ready to proceed."[7]

¶21 Father testified that Mother "was served the petition and application for temporary order" in New Hampshire after 5 pm. on Friday, May 29, 2015.[8] He further testified the next full work day she applied for a VPO which was granted in his absence.[9] Father testified the reasons Mother gave for the VPO was "he beat her and played Russian roulette with her." He also testified he hired an attorney in New Hampshire and they both attended the VPO hearing at which the question was raised about court proceedings in Oklahoma. Without objection, Father testified the trial judge in New Hampshire asked Mother why she filed the VPO, her only response was she did not want to go back to Oklahoma, and the trial judge informed Mother she had to appear in Oklahoma regardless of the VPO. Father further testified the trial judge continued the hearing "to read further into the evidence" and at the second hearing, Mother dismissed the VPO.

¶22 "Without having the opportunity to review the case law," the trial court announced his findings, as follows: 1) "there is a distinction between not waiving jurisdiction and affirmatively asserting that Oklahoma has jurisdiction and seeking affirmative relief from [this] Court"; 2) it has jurisdiction "both based on the pleadings, but in particular the Cross-Petition," in which Mother verified that "Oklahoma has home state jurisdiction"; 3) "the fact it seems that there was an amended petition that was filed that would, at that point in time more clearly then perhaps even at that time that the separate maintenance petition was filed, jurisdiction would be in the State of Oklahoma"; and 4) "because no other state was exercising jurisdiction and no other state has any other type of action filed, Oklahoma has jurisdiction."

¶23 At the September 30, 2016 hearing scheduled to review the proposed journal entry, the first issue presented was what jurisdictional findings should be included in the order. The trial court approved both his preliminary findings and final ruling on jurisdiction.

¶24 The "Order" filed October 7, 2016, includes the trial court's jurisdictional findings, as announced, and adjudges, orders and decrees "Oklahoma has proper jurisdiction, Oklahoma County [has] proper venue, either by virtue of amended petition for divorce or the cross-petition filed by [Mother]." In separate sections of the same order the court grants the dissolution of the parties' marriage, awards joint custody of the minor children to the parties with Father as primary custodian, determines child support, and provides for tax exemptions. Mother's appeal followed.

Standard of Review

¶25 Mother's Brief in Chief includes a single proposition alleging legal error with the trial court's joint custody award. However, "[q]uestions of jurisdiction may be raised at any time, either in the trial court or on appeal; and even in the absence of an inquiry by the litigants, [this] court may examine jurisdiction." Woods Petroleum Corp. v. Sledge, 1981 OK 89, ¶ 1, 632 P.2d 393. Appellate courts "are not bound by the trial court's [jurisdictional] findings but must independently judge the basis for exercising jurisdiction." Joliff v. Joliff, 1992 OK 38, ¶ 7, 829 P.2d 34, 37 (finding trial court lacked subject matter jurisdiction under the UCCJA[repealed 1998]).

Analysis

¶26 The trial court's oral finding that "the UCCJEA" governs this custody dispute is not included in the appealed order, and there are no statutory citations to the OUCCJEA. The Act applies to a "child custody proceeding," defined by § 551-102(4) as "a proceeding in which legal custody, physical custody, or visitation with respect to a child is an issue." The term "includes a proceeding for divorce, separation, neglect, abuse, dependency, guardianship, paternity, termination of parental rights, and protection from domestic violence, in which the issue may appear." Id. Mother's testimony that the children resided with both parents in Massachusetts and Oklahoma before Father filed his petition supports that his initial action for separate maintenance and custody is a "child custody proceeding" under the OUCCJEA.

¶27 We assume from the appealed order's single reference to "home state" and the marital dissolution itself that the court's finding Oklahoma has jurisdiction refers to initial child custody jurisdiction under § 551-201 of the OUCCJEA.[10] Section 551-201(A) "is the exclusive jurisdictional basis for making a child custody determination by a court of this state." § 551-201(B) of the OUCCJEA.[11] As defined therein, "'child custody determination' means a judgment, decree, or other order of a court providing for the legal custody, physical custody, or visitation with respect to a child" and "includes a permanent, temporary, initial, and modification order." § 551-102(3).

¶28 Like the UCCJA,[12] adherence to and satisfaction of the OUCCJEA's mandatory prerequisites allow a court of this State to exercise subject matter jurisdiction, i.e., the power and authority to consider and determine the issue of child custody. See Joliff, 1992 OK 38, ¶ 7, 829 P.2d at 36-37. Parties can neither waive subject matter jurisdiction nor confer such jurisdiction by consent. Id.; see also Matter of C.A.D., 1992 OK 89, n. 36, 839 P.2d 165.

¶29 Since Joliff, Oklahoma courts have recognized that parties may consent to subject matter jurisdiction only if authorized by statute. See Bazilewich v. Bazilewich, 2014 OK CIV APP 77, ¶ 12, 334 P.3d 958, 960 (citing Knowlton v. Knowlton, 2005 OK CIV APP 22, ¶ 5, 110 P.3d 578, 579, and its authority, Barrett v. Barrett, 1994 OK 92, 878 P.2d 1051, 1054). We find no published Oklahoma opinions interpreting § 551-201(A) to determine if it authorizes such consent to initial child custody jurisdiction, as the trial court basically found in this case.

¶30 Statutory interpretation presents a question of law. Fanning v. Brown, 2004 OK 7, 85 P.3d 841. The fundamental rule of statutory construction is to ascertain and give effect to the legislative intent, which is first sought in the language of a statute. Id. When the language of a statute is plain and unambiguous, no occasion exists for application of rules of construction, and the statute will be accorded meaning as expressed by the language employed. City of Durant v. Cicio, 2002 OK 52, 50 P.3d 218. We do not limit our consideration to a single word or phrase, but shall construe together the various provisions of relevant enactments, in light of their underlying general purpose and objective, to ascertain legislative intent. World Publishing Co. v. Miller, 2001 OK 49, ¶ 7, 32 P.3d 829, 832.

¶31 Like the UCCJA, the purpose of the OUCCJEA is to "avoid jurisdictional competition and conflict with courts of other states." See § 551-101, official comment. Another purpose is to "promote cooperation with the courts of other States to the end that a custody decree is rendered in that State which can best decide the case in the interest of the child." Id.

¶32 We first acknowledge two OUCCJEA statutes do plainly and unambiguously provide for judicial consideration of the parties' agreement and/or acquiescence to jurisdiction. See §§ 551-207(B)(5) and 551-208(A)(1). However, consideration of such an agreement is applicable only when "a court of this State which has jurisdiction under [the OUCCJEA]" is deciding whether to decline to exercise its jurisdiction because "it is an inconvenient forum" (§ 551-207) or "a person seeking to invoke its jurisdiction has engaged in unjustifiable conduct." § 551-208. The only issue raised and decided at the hearing on the merits was whether the trial court had jurisdiction, and there is no indication at that same hearing that §§ 551-207 or § 551-208 was raised or considered by the trial court.

¶33 Section 551-201(A) expressly refers to §§ 551-207 and § 551-208 several times in its body:[13]

A. Except as otherwise provided in [§ 551-204] of this act, a court of this state has jurisdiction to make an initial child custody determination only if:

1. This state is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six (6) months before the commencement of the proceeding and the child is absent from this state, but a parent or person acting as a parent continues to live in this state;

2. A court of another state does not have jurisdiction under paragraph 1 of this subsection, or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under [§ 551-207 or § 551-208] of this act, and:

a. the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this state other than mere physical presence, and

b. substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;

3. All courts having jurisdiction under paragraph 1 or 2 of this subsection have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under [§ 551-207 or § 551-208] of this act; or

4. No court of any other state would have jurisdiction under the criteria specified in paragraph 1, 2, or 3 of this subsection.

¶34 Interpreting § 551-201(A) as a whole, its subsections plainly and unambiguously refer to application of §§ 551-207 and 551-208 by a court of another state to determine whether to decline to exercise its jurisdiction of the children because Oklahoma is the more appropriate forum to determine custody. Consideration, if any, to the parties' agreement or acquiescence to jurisdiction is therefore limited to that determination by the other state court. Based on the plain and unambiguous language, we conclude § 551-201(A) does not authorize the parties to agree, consent, acquiesce or stipulate to subject matter jurisdiction for purposes of initial child custody jurisdiction under the OUCCJEA. To interpret otherwise, would clearly ignore its purposes.

§ 551-201(A) - Initial Child Custody Jurisdiction

¶35 Unlike the UCCJA section by which a court of this State could assume jurisdiction if any one of four independent circumstances existed, the OUCCJEA gives priority to "home state" jurisdiction in § 551-201(A)(1), with the goal of preventing simultaneous child custody proceedings in different states.[14] Two OUCCJEA definitions establish the critical time for determining home state status. First, "home state" means "the state in which a child lived with a parent ... for at least six (6) consecutive months immediately before the commencement of a child custody proceeding." § 551-102(7). The term "commencement" means "filing of the first pleading in a proceeding." § 551-102(5).

¶36 Applying these definitions to § 551-201(A)(1), we conclude Oklahoma is not the "home state." Father commenced this child custody proceeding when he filed the "first pleading" on May 27, 2015, i.e., his petition for separate maintenance and application for temporary order. The undisputed facts demonstrate the children had not resided in Oklahoma with their parents for six consecutive months immediately preceding that date. To the extent the trial court relied on Father's Amended Petition for Divorce in deciding jurisdiction of the children, we conclude such finding is contrary to the OUCCJEA and its purposes.

¶37 The first requirement for Oklahoma's jurisdiction under subsection (A)(2) is satisfied only if "a court of another state does not have home state jurisdiction or the home state has declined to exercise jurisdiction." Under the facts of this case, New Hampshire does not have home state jurisdiction because the children were there for less than a week when Father filed his separate maintenance petition. Massachusetts is not the home state because the children lived there only the first 3½ months out of the six consecutive months immediately preceding the date Father filed his separate maintenance petition, May 27, 2015.[15]

¶38 Since a court of another state does not have home state jurisdiction, Oklahoma may have jurisdiction if the next two requirements for jurisdiction under (A)(2) are met: (1) the child and at least one parent ... have a significant connection with Oklahoma other than mere physical presence; and (2) there is available in Oklahoma substantial evidence concerning the child's care, protection, training and personal relationships.

¶39 Our review of the record reveals Father was born in Oklahoma, and his biological father, uncles, aunts, cousins and grandfather still live in this state. Having lived here only 2 1/2 months, there is neither record evidence of the minor children's "significant connection" to Oklahoma nor "substantial evidence" available here of the children's past and future care, protection, training and personal relationships. See Wood v. Redwine, 2001 OK CIV APP 115, ¶ 10, 33 P.3d 53 (citing Joliff v. Joliff, 1992 OK 38, ¶ 9, 829 P.2d 34, 37-38). In comparison, the minor children lived with their parents in Massachusetts the majority of time since their birth, where Mother and the children moved after staying in New Hampshire with Mother's mother. Father's biological father and his wife also live in Massachusetts. Considering Mother and the minor children's significant connection with Massachusetts and lack of significant connections with Oklahoma, we find this State does not have jurisdiction under § 551-201(A)(2).

¶40 For a court in Oklahoma to have jurisdiction under § 551-201(A)(3), "all states that would have jurisdiction under (A)(1) or (A)(2) are required to decline to exercise jurisdiction under either § 551-207 or § 551-208." There is no home state under the facts of this case, and Massachusetts is the only state with significant connections. The lack of any record evidence that a court of Massachusetts has declined to exercise its jurisdiction pursuant to either § 551-207 or § 551-208 eliminates Oklahoma's jurisdiction of the subject minor children under § 551-201(A)(3).

¶41 Pursuant to § 551-201(A)(4), a court of this state would have jurisdiction only if "no court of any other state would have jurisdiction under the criteria specified in paragraphs 1, 2, or 3." Because Massachusetts is the only state with significant connection jurisdiction under § 551-201(A)(2) and there is no evidence that state has declined to exercise its jurisdiction pursuant to either § 551-207 or § 551-208, the default provision does not apply to this case.

¶42 Based on application of the undisputed facts to § 551-201(A), the trial court's finding of jurisdiction of the minor children is contrary to law. Without initial jurisdiction under the OUCCJEA, the trial court's order, which in part, awards joint custody to the parties, is void for lack of subject matter jurisdiction. As a consequence, all of the prior custody orders filed in the proceeding are also void. The award of joint custody and related issues are vacated.

Jurisdiction of the Parties' Action for Marital Dissolution

¶43 Title 43 O.S. 2011 § 102, which was not specifically addressed at the hearing, requires "the petitioner or the respondent in an action for divorce or annulment of a marriage must have been an actual resident, in good faith, of the state for six (6) months immediately preceding the filing of the petition." Father's petition for separate maintenance alleges he "is now and has been for more than six (6) months an actual resident, in good faith, of [Oklahoma]," but the word "six" and numeral "6" is crossed out with no identifying initials.

¶44 It has long been held that Oklahoma's "statutory residency requirements are, of course, jurisdictional and establishment of a domicile for a statutory period of time is a prerequisite to the court's power to render a divorce." Matter of Adoption of B.R.H., 1991 OK CIV APP 125, ¶ 18, 823 P.2d 383 (citing Meyers v. Meyers, 1948 OK 246, 199 P.2d 819 and Burnworth v. Burnworth, 1977 OK CIV APP 52, 572 P.2d 301) (emphasis added).

¶45 "The phrase 'actual resident' and the word 'resident' as used in Title 12 O.S. 1951 § 1272 [now 43 O.S.2011 § 102][16] ... contemplate an actual residence with substantially the same attributes as are intended when the word 'domicile' is used." Bixby v. Bixby, 1961 OK 100, ¶ 0, 361 P.2d 1075 (syllabus 1). See also Chapman v. Parr, 1974 OK 46, ¶ 23, 521 P.2d 799, 802; Clark v. Clark, 1961 OK 80, ¶ 0, 361 P.2d 207 (Syllabus 2). "The question of domicile in an action for divorce is one of fact, to be determined from the evidence in the case." Bixby, ¶ 15 (quoting Pope v. Pope, 1926 OK 19, ¶ 0, 243 P. 962 (Syllabus 4)). "The controlling fact to be considered is the fact of intention and to determine this fact the trial court, and this court on appeal, may take into consideration all the movements, transactions, and attending circumstances of the party or parties involved in the question." Id. Such consideration includes "the actions or conduct of a person after arriving at a given place" which is asserted to be that person's new residence. Id., ¶ 13. "To effect a change of domicile, there must be an actual abandonment of the first domicile, coupled with an intention not to return to it, and ... a new domicile acquired by actual residence in another place with intention of making it a permanent home." Id., ¶ 13.

¶46 We agree with the trial court's finding that jurisdiction was more appropriate under the amended petition for divorce than at the time he filed his petition for separate maintenance pursuant to 43 O.S. § 102. On this record, the undisputed testimony establishes Father came to Oklahoma with the intent not to return to Massachusetts and to make his home in Del City, Oklahoma his permanent home. The court's finding of jurisdiction over the parties' action for marital dissolution is affirmed.

Custody

¶47 Mother argues that the trial court misapplied the statutes relevant to custody and domestic violence. To prevent further delay and potential harm to the minor children and to provide guidance in this initial child custody determination involving domestic violence, this Court is compelled to explain that even if the trial court had subject matter jurisdiction of the children, its joint custody award would nevertheless have been vacated based on legal error, i.e. incorrect interpretation and improper application of Oklahoma statutes requiring courts to consider evidence of domestic violence, stalking or harassment.

¶48 At the hearing on August 16, 2016, Father testified during direct examination that he was involved in his children's lives, attended church regularly, and had a job as a welder. Father described how DHS was called to his house on November 29th, 2015 when allegations were made against him about loose firearms in the house, weapons in the window sills, no food in the house, dog urine and feces throughout the house, and the children sleeping in urine soaked bed sheets. DHS inspected his house for approximately an hour, and thereafter made no finding of neglect, concluding that the children were safe. The record does not have the DHS report or conclusion.

¶49 Father was cross examined about numerous threatening social media posts.[17] The father denied: 1) this custody case was about revenge; 2) he was using the kids as a control mechanism; 3) his Snapchat posts were directed towards the Mother; 4) kicking the toy out from under their son; 5) ever physically abusing Mother; 6) ever verbally abusing her; and also 7) having any guns at his house because he had sold them.[18] He did admit however that some of his Snapchat posts were directed at the Mother's boyfriend.

¶50 Mother testified to the multiple episodes of domestic abuse. She recalled: 1) physical abuse, starting in July 2010 when he slapped her; 2) he strangled her at his aunt's house in Oklahoma when he came up behind her while she was hanging clothes; 3) demeaning her by telling her that nobody wanted her; and 4) his family thought she was crazy. Mother further testified that Father sought revenge on her for leaving him, by taking their kids from her, and using this as a way to control her. Also, she believed that he filed this action as a way of getting back at her for not doing things like he wanted, or failing to return all of his phone calls.

¶51 GAL reported that the Mother stated Father had thrown her against a door and slapped her, and that he kept her from leaving by holding on to her keys and phone. The GAL report described a sexual assault during the marriage, when the Mother confronted him about her suspicions of him cheating.[19] Father's version was different; he admitted to them having an argument about his fidelity, but indicated that they later made up and he made this statement during voluntary sexual contact. The GAL report determined Mother's version was more credible.

¶52 The GAL included in her report that the children both love their parents and they have no complaints about how they are being treated at either house. However, one reported concern was how Father spoke negatively about Mother's boyfriend to the children, which she felt was damaging. Significantly, the GAL found Father harbors a lot of anger. The focuses of the GAL's concerns are Father's social media posts, about which she stated, "At best they are very immature; at worst they are overtly aggressive. And I think that tells you who Mr. Jones is and it is because of those reasons I am recommending that custody be with Mom and that we have long distance visitation with Dad."

¶53 After the GAL concluded her report, the court inquired how the children were returned to Oklahoma from Massachusetts in September. The parties were unsure if this was enforced by a writ from Oklahoma, but believed there was a court order and an affidavit from Father giving his parents permission to execute the court order and obtain the children. The court addressed concerns regarding "parental alienation" by Mother against Father. These concerns related to the children not being returned to Father when his six week rotation began a week before the trial, and the children not returning from Massachusetts to Oklahoma at the time of trial. Mother explained there was confusion between the attorneys regarding transporting the kids as cost-effectively as possible, because it was the start of the school year in Massachusetts. Mother denied intent to violate a court order. Mother testified that the text communication with Father had established a need for the attorneys to discuss the children's presence.

¶54 Additionally, the court inquired of the GAL about the basis of the Civil Protection Order in New Hampshire. She noted that "there might be some indication that Mr. Jones has been inappropriate with Ms. White in my report." The court was concerned with the judge in New Hampshire not granting the VPO, and whether Mother filed it so that she wouldn't have to return to Oklahoma. The GAL explained that the mother's testimony was that she filed it because she was afraid to come back to Oklahoma and that Mother asked the judge to dismiss the VPO, because she did not think it was in the best interest of her children.

¶55 The court was concerned the children were not at trial. Mother explained that her current employment does not afford her the expense of bringing her children with her. The trial court voiced his concern with alienation of the children by Mother, with which the GAL specifically disagreed. The trial court did not accept the GAL report, instead finding there was alienation, and awarded custody to Father as the primary custodian and final decision maker.[20]

¶56 At the court's ruling, Mother's counsel requested the Court "to elaborate on [43 O.S. 2011] § 109.3 ... whether or not it found a preponderance [of the evidence]?" The Court responded:

There's no finding of that nature. In fact, the way that Statute reads if there has been a determination. There was no determination by any other Court, there's been no evidence presented that there was ever a filing of a domestic abuse complaint, other than the one in New Hampshire, which it was dismissed. And the testimony by [Mother] on the stand was that, the Court finds that she stated that, if not the reason that she did it, filed the VPO action, was so she wouldn't have to return to Oklahoma.

The court added "But there's no such finding. If there were such finding, then of course I would have to take that into consideration."

¶57 The court next asked Mother's counsel, "you particularly mentioned 43 O.S. § 113, is that correct?" Mother's counsel responded, "43 O.S. § 109.3." The trial court announced "Okay. Court has also read 113, particularly 113. The Court makes no such findings after having read [§] 113.[21] With regard to 109.3, Court makes no such findings there has been a preponderance of the evidence and therefore 109.3 has no bearing on this order." These announced findings are found in the last three paragraphs of the appealed order.

¶58 The statute about which Mother's counsel specifically questioned the trial court, 43 O.S. 2011 § 109.3, is titled "Custody, guardianship, or visitation cases - Evidence of Domestic Abuse" and provides as follows:

In every case involving the custody of, guardianship of or visitation with a child, the court shall consider evidence of domestic abuse, stalking and/or harassing behavior properly brought before it. If the occurrence of domestic abuse, stalking or harassing behavior is established by a preponderance of the evidence, there shall be a rebuttable presumption that it is not be in the best interest of the child to have custody, guardianship, or unsupervised visitation granted to the person against whom domestic abuse, stalking or harassing behavior has been established.

The Legislature's intent that a trial court may not ignore evidence of domestic abuse and related conduct is clearly evident from § 109.3's plain and unambiguous language that "the court shall consider evidence of domestic abuse, stalking and/or harassing behavior properly brought before it" (emphasis added). The elevated status of such evidence is also clear from the Legislature's enactment of § 109.3's "rebuttable presumption" that any type of custody or shared parenting plan, including residence with the perpetrator of domestic violence, harassing or stalking behavior is detrimental and not in the best interest of the child."[22] Pursuant to § 109.3, the rebuttable presumption is raised "[i]f the occurrence of domestic abuse, stalking or harassing behavior is established by a preponderance of the evidence."

¶59 In Oklahoma, a "rebuttable presumption operates to impose upon the opposing party the duty to offer evidence to the contrary." Conaghan v. Riverfield Country Day School, 2007 OK 60, ¶ 13, 163 P.3d 557. When such evidence is introduced, "the presumption disappears, leaving in evidence the basic facts which are to be weighed." Id., ¶ 13.[23]

¶60 The request by Mother's counsel for the trial judge "to elaborate on the preponderance of the evidence" basically posed two questions: 1) did her evidence of domestic abuse and related behaviors fail to meet § 109.3's standard, or 2) if her evidence established the occurrence of such behavior so that the rebuttable presumption arose, did Father's evidence to the contrary result in overcoming the presumption against custody to Father? As the trial court's response and finding in his appealed order demonstrate, neither question was answered based on his interpretation that § 109.3 applies only if there has been a prior "determination" of domestic abuse or related behavior by another court.

¶61 Section 109.3, however, does not include the term "determination" on which the trial court's interpretation relied. Instead, that term is found in 43 O.S. 2011 § 109(I)(1), one of several Oklahoma family law statutes, which, like § 109.3, specifically direct judicial consideration of evidence of domestic abuse and related behaviors in child custody disputes. Pursuant to § 109(I)(1):

In every proceeding in which there is a dispute as to the custody of a minor child, a determination by the court that domestic violence, stalking, or harassment has occurred raises a rebuttable presumption that sole custody, joint legal or physical custody, or any shared parenting plan with the perpetrator of domestic violence, harassing or stalking behavior is detrimental and not in the best interest of the child, and it is in the best interest of the child to reside with the parent who is not a perpetrator of domestic violence, harassing or stalking behavior.

(Emphasis added.) Section 109(I)(2) includes the definition of the terms "domestic violence" and other related conduct, "stalking" and "harassment," for purposes of § 109(I). Sections 109(I)(3) - (I)(5) include additional mandates for the trial court when domestic violence is alleged in custody disputes.[24]

¶62 There is no definition of "determination" in § 109(I)(2) or other related statutes, but its common meaning is "the act of making or arriving at a decision" or "the act of settling a dispute...esp[ecially] by a judicial body." Webster's II New College Dictionary, 3rd Ed. (2005), p. 315. Based on § 109(I)(1)'s plain and unambiguous language, a "determination by the court" refers to the decision made in the pending custody dispute "that domestic violence, stalking, or harassment has occurred" between the perpetrator and non-perpetrator. No prior determination of such occurrence by another court in a domestic abuse case or otherwise is required for application of either § 109.3 or § 109(I)(1).

¶63 In this child custody proceeding, we conclude the trial court erred as a matter of law by misinterpreting the term "determination" in § 109(I)(1) as requiring a prior determination of domestic violence, stalking or harassment by another court and by failing to apply § 109.3's presumption based on that same misinterpretation.

CONCLUSION

¶64 As to the custody of the minor children, the order on appeal is reversed for lack of subject matter jurisdiction under the OUCCJEA, and all custody and child support orders are therefore vacated and void. The custody of the children must be adjudicated in Massachusetts, unless residency changes of the parties have since changed and now allow jurisdiction to be proper in Oklahoma. If Oklahoma becomes the proper forum, domestic violence findings should be made. The order dissolving the marriage of the parties is affirmed.

¶65 REVERSED IN PART, AFFIRMED IN PART AND REMANDED FOR FURTHER PROCEEDINGS.

GOREE, V.C.J., and MITCHELL, J., concur.

FOOTNOTES

[1] Except in cases where temporary emergency jurisdiction is sought, "[a] court of this state ... before hearing a child custody proceeding, shall examine the court documents and other information supplied by the parties pursuant to [§ 551-209]." § 551-206(B). Section 209(A) also requires "each party, in its first pleading or in an attached affidavit" to provide "the names and present addresses of the persons with whom the child has lived during that period." For additional requirements, see § 551-209(1)-(3). No affidavit is attached to Father's petition or application in the appellate record. As here, when such omissions in the pleadings exist, trial judges are authorized on "its own motion, [to] stay proceedings until the information is furnished." § 551-209(B).

[2] The alleged changes included: "Father currently lives in a home that is not suitable for the minor children," the refrigerator has "very little or ... rotting food," the children were sleeping on mattresses on the floor with his girlfriend's two children, the dog in the home is malnourished, and Father "continues to harass Mother with picture messages not conducive to him having custody." The attached Exhibit A includes eleven pictures of these conditions.

[3] There is no petition for divorce or for marital dissolution in appellate record and the certified court appearance docket has no entry for the filing of the same.

[4] For the definition of "home state," Father also cited the federal Parental Kidnaping Prevention Act (PKPA), 28 U.S.C. § 1738A, and Oklahoma''s Uniform Interstate Family Support Act, 43 O.S. § 601-101 et seq. Mother relied on the same authorities in her Cross-Petition.

[5] Mother's counsel explained a hearing had been set, there was a problem with service with counsel, and it was reset to January 13, 2016, before which hearing the parties agreed to temporary joint custody.

[6] The trial judge "directed the parties to be here... because of the seriousness of the issues with regard to the minor child ... enrolled [in kindergarten] in both Massachusetts and in Oklahoma and that a determination perhaps needs to be made" and he had "suspended a trial that was continuing so that this matter could be taken up."

[7] There is no Court's Exhibit No. 1 listed in the August 16, 2016 Transcript, but considering prior questions the judge could only be referring to a copy of Mother's "Response and Counterclaim" filed June 30, 2016.

[8] The appellate record and certified court appearance docket both lack an entry for return of service for the petition and application on Mother. The record does include the Court Minute from the July 16, 2016 temporary order hearing & July 29, 2015 "Court Order," both of which expressly state "Mother was served May 29, 2015." At the August 16, 2016 hearing, Mother replied "yes" to the cross examination question, "you filed for a VPO in New Hamphire and ironically you filed that the next working day after you got served Oklahoma papers, didn't you?" Tr., p. 90, LL 2-5.

[9] Neither Mother's VPO application nor any other documentation from that out of state proceeding is in the record. Under the OUCCJEA"each party has a continuing duty to inform the court of any proceeding in this or any other state that could affect the current proceeding." § 551-209(D). "Child custody proceeding" includes a proceeding for protection from domestic violence, § 551-102(4), which Father's admission confirms was Mother's stated reason for obtaining it. Therefore, Father breached his continuing duty to inform the trial court about the VPO in New Hampshire which was granted only 2-3 days after Father's petition.

[10] Pursuant to the Official Comment for § 551-201, "this section provides mandatory jurisdictional rules for the original child custody proceeding."

[11] All citations to statutes in this memorandum opinion are to the 2011 version of OUCCJEA, unless otherwise identified.

[12] In 1998, the Legislature repealed the UCCJA and enacted the OUCCJEA.

[13] Section 551-201(A) expressly refers to one other UCCJEA statute, § 551-204, which it designates as an exception to initial child custody jurisdiction. Section 551-204 permits "a court of this state to assume temporary emergency jurisdiction if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse." There are no supporting record facts for this type of jurisdiction under the OUCCJEA.

[14] Except for temporary emergency jurisdiction, § 551-206(a) provides a court in Oklahoma "may not exercise its jurisdiction" if a child custody proceeding has already been commenced in another state's court that has "jurisdiction substantially in conformity with [OUCCJEA] unless the proceeding has been terminated or is stayed by the court of the other state because a court of this state is a more convenient forum under [§ 551-207] of this act."

[15] The result is the same whether applying the OUCCJEA, or the UCCJA, which Massachusetts applies. Under the UCCJA, "home state" means "the state in which the child immediately preceding the date of commencement of the custody proceeding resided with his parents ... for at least 6 consecutive months." M.G.L.A. 209B § 1. This definition is basically identical to the OUCCJEA. Although Massachusetts "had been the children's home state within six months before the date of the commencement of the proceeding" and the children "were absent from [Massachusetts]," its exercise of extended home state jurisdiction requires "a parent ... continues to reside in [Massachusetts]." M.G.L.A. 209B § 2. That requirement is missing in this case, since both parents moved to Oklahoma.

[16] Except for its application to "the plaintiff in an action for divorce" and inclusion of county residency requirements, § 1272's terms are substantively identical to § 102.

[17] We do not detail Father's social media posts to Mother, the majority of which contain obscene and offensive language or gestures. See Respondent's Exhibits 1-4, 7.

[18] Contrary to Father's testimony, Charles Jones, Father's adopted father, testified they had planned to go shooting the day before trial, but "it didn't happen." Mr. Jones confirmed they would have used Father's guns to go shooting and that he still owns guns.

[19] See Court's Exhibit 1, "Guardian Ad Litem Report," Facts, ¶ 2. For the record, we note the GAL admitted at the September 30, 2016 hearing that she forgot to admit her report at the hearing. Tr. p. 9. All of the parties agreed to supplement the trial record to incorporate her report, after it was admitted as marked by Mother's Counsel, "Court's Exhibit 1." Tr. p. 10-11.

[20] "Parental alienation" is not a recognized factor for custody determination when domestic violence is at issue. 43 O.S. § 111.4.

[21] Title 43 O.S. 2011 § 113 addresses when a court may consider a child's preference for custody or visitation, and in subsection (C) provides "[t]here shall be a rebuttable presumption that a child who is twelve (12) years of age or older is of a sufficient age to form an intelligent preference." It is unclear why the trial court also considered this statute because the subject minor children were only 5 and 3 years old when the matter was heard.

[22] The Supreme Court of North Dakota, in applying a similar statute to Oklahoma's section 109, in Helbing v. Helbing, 532 N.W.2d 650 (N.D. 1995), held that "[t]he trial court must give paramount consideration to evidence of domestic violence and make specific findings to consider its effect on custodial placement." Id. at 652.

[23] "A presumption is a procedural tool." Conaghan, 2007 OK 60, ¶ 11. Errors in practice and procedure that do not affect a party's substantial rights are, on appeal, considered harmless. Teague v. United Truck Service, 1972 OK 97, ¶ 14, 499 P.2d 380. Contrary to § 109.3, the trial court did not consider Mother's evidence of domestic abuse and/or harassment based on his statutory misinterpretation and failed to apply the presumption, which prevented it from properly weighing the evidence relevant to § 109.3. See Norman v. Mercy Memorial Health Center, Inc., 2009 OK CIV APP 55, ¶ 19, 215 P.3d 841, 845. A parent has a fundamental right to the care and custody of his or her child that is protected by the United States and Oklahoma Constitutions. Such error is not harmless.

[24] Pursuant to § 109(I)(3), "[i]f a parent is absent or relocates as a result of an act of domestic violence by the other parent, the absence or relocation shall not be a factor that weighs against the parent in determining custody or visitation." Pursuant to § 109(I)(4), "[t]he court shall consider as a primary factor, the safety and well-being of the child and of the parent who is the victim of domestic violence or stalking behavior, in addition to other facts regarding the best interest of the child." Pursuant to § 109(I)(5), "[t]he court shall consider the history of the parent causing physical harm, bodily injury, assault, verbal threats, stalking, or harassing behavior, or the fear of physical harm, bodily injury, or assault to another person, including the minor child, in determining issues regarding custody and visitation."






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 1991 OK CIV APP 125, 823 P.2d 383, 63 OBJ 389, Adoption of B.R.H., Matter of
Discussed
 2001 OK CIV APP 115, 33 P.3d 53, 72 OBJ 2968, WOOD v. REDWINE
Discussed
 2005 OK CIV APP 22, 110 P.3d 578, KNOWLTON v. KNOWLTON
Discussed
 2009 OK CIV APP 55, 215 P.3d 841, NORMAN v. MERCY MEMORIAL HEALTH CENTER, INC.
Discussed
 2014 OK CIV APP 77, 334 P.3d 958, BAZILEWICH v. BAZILEWICH
Discussed
 1977 OK CIV APP 52, 572 P.2d 301, BURNWORTH v. BURNWORTH
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1992 OK 38, 829 P.2d 34, 63 OBJ 951, Joliff v. Joliff
Discussed at Length
 1992 OK 89, 839 P.2d 165, 63 OBJ 1911, C.A.D., Matter of
Discussed
 1948 OK 246, 199 P.2d 819, 200 Okla. 683, MEYERS v. MEYERS
Discussed
 1994 OK 92, 878 P.2d 1051, 65 OBJ 2517, Barrett v. Barrett
Discussed
 2001 OK 49, 32 P.3d 829, 72 OBJ 1807, WORLD PUBLISHING CO. v. MILLER
Discussed
 1961 OK 80, 361 P.2d 207, CLARK v. CLARK
Discussed
 1961 OK 100, 361 P.2d 1075, BIXBY v. BIXBY
Discussed
 2002 OK 52, 50 P.3d 218, CITY OF DURANT v. CICIO
Discussed
 1972 OK 97, 499 P.2d 380, TEAGUE v. UNITED TRUCK SERVICE
Discussed
 1974 OK 46, 521 P.2d 799, CHAPMAN v. PARR
Discussed
 2004 OK 7, 85 P.3d 841, FANNING v. BROWN
Discussed
 2007 OK 60, 163 P.3d 557, CONAGHAN v. RIVERFIELD COUNTRY DAY SCHOOL
Discussed at Length
 1926 OK 19, 243 P. 962, 116 Okla. 188, POPE v. POPE
Discussed
 1981 OK 89, 632 P.2d 393, Woods Petroleum Corp. v. Sledge
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 1272, Renumbered as 43 O.S. § 102 by Laws 1989, SB 121, c. 333, § 1, eff. November 1, 1989
Cited
Title 43. Marriage
 Cite
Name
Level

 43 O.S. 551-101, Short Title
Cited
 43 O.S. 551-201, Initial Child Custody Jurisdiction
Cited
 43 O.S. 601-101, Short Title
Cited
 43 O.S. 109.3, Child Custody, Visitation, and Guardianship - Domestic Abuse, Stalking, or Harassment
Discussed at Length
 43 O.S. 111.4, Refusal of Visitation Based on Reasonable Belief of Abuse or Neglect - Suspension of Visitation Upon Evidence of Abuse or Neglect
Cited
 43 O.S. 102, Residency Requirement of Plaintiff or Defendant - Army Post or Military Reservation
Discussed at Length
 43 O.S. 109, Best Interest of Child Considered in Awarding Custody or Appointing Guardian - Joint Custody - Plan - Arbitration
Cited
 43 O.S. 113, Preference of Child Considered in Custody or Visitation Actions
Discussed


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA